Jeffrey EVANS, Plaintiff,

v.

The CITY OF NEW YORK and Richard E. Jackson, individually and as former commissioner of the State of New York Department of Motor Vehicles, Raymond P. Martinez, individually and as commissioner of the State of New York Department of Motor Vehicles, Kenneth J. Ringler, Jr., individually and as former interim commissioner of the State of New York Department of Motor Vehicles and New York City Police Officer Stephen Lewis Defendants,

No. 01 Civ. 6398(JGK).

United States District Court,
S.D. New York.

March 12, 2004.

David Zelman, Leon M. Greenberg, Esq., New York City, for Plaintiff.

Lisa Ellen Fleischman, Attorney General of the State of New York, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

This action is brought by the plaintiff, Jeffrey Evans, pursuant to 42 U.S.C. § 1983 for alleged violations of the plaintiff's federal constitutional rights arising out of the suspension of the plaintiff's New York State driver's license and his subsequent arrest and prosecution for driving with a suspended license. The defendants are the former, former interim, and current Commissioner of the State of New York Department of Motor Vehicles ("DMV").[1] The plaintiff alleges that his driver's license was suspended according to DMV procedures that violated his rights to due process under the Fourteenth Amendment. The plaintiff also asserts false arrest and malicious prosecution claims, and to the extent these claims are asserted under state law the plaintiff seeks to invoke the Court's supplemental jurisdiction over these claims.

The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all of the plaintiff's claims. The plaintiff has also cross-moved for summary judgment on all of his claims.[2]

1. The claims originally asserted against the City of New York and New York City Police Officer Stephen Lewis were discontinued with prejudice. (Second Am. Compl. ¶ 1.)

2. The defendants filed a statement of undis-

## I

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

## II

Unless otherwise noted, the following facts are not in dispute. In 2000, the plaintiff, Jeffrey Evans, held a driver's license issued by the New York State Department of Motor Vehicles ("DMV"). (Defs.' Rule 56.1 St. ¶ 1; Transcript of Deposition of Jeffrey Evans dated Jan. 14, 2003 ("Evans Dep.") attached as Ex. E to Affirmation of Lisa E. Fleischmann dated June 16, 2003 ("Fleischmann Affirm.") at 53–55.) Defendant Richard E. Jackson served as Commissioner of the DMV from February 14, 1995 to October 26, 2000. (Defs.' Rule 56.1 St. ¶ 2; Affidavit of Rich-

---

puted facts as required by Local Rule 56.1, but the plaintiff did not file a counterstatement of facts that he contends are still in dispute, as required by the rule. The facts set forth in the defendants' Rule 56.1 statement will be deemed admitted if they are supported

by the record. *See Giannullo v. City of New York,* 322 F.3d 139 (2d Cir.2003); Local Civ. R. 56.1. The plaintiff did file a Rule 56.1 statement in support of his own motion for summary judgment, and the defendants filed a counterstatement.

ard E. Jackson, Jr., dated June 16, 2003 ("Jackson Aff.") at ¶ 1.) Defendant Kenneth J. Ringler, Jr., served as interim Commissioner of the DMV from October 26, 2000 to December 27, 2000. (Defs.' Rule 56.1 St. ¶ 4; Affidavit of Kenneth J. Ringler, Jr., dated June 13, 2003 ("Ringler Aff.") at ¶ 2.) Since December 27, 2003, defendant Raymond P. Martinez has been Acting Commissioner and then Commissioner of the DMV. (Defs.' Rule 56.1 St. ¶ 3; Affirmation of Raymond P. Martinez dated June 16, 2003 ("Martinez Aff.") at ¶ 2.)

On April 27, 2000, the plaintiff received a speeding ticket in Brooklyn, New York. (Defs.' Rule 56.1 St. ¶ 5; Ticket No. 4052404956 attached as Ex. A to Affirmation of Paul D. Shur ("Shur Affirm.") dated June 16, 2003.) The back of the ticket contains a "Plea Notice" that states: "If you plead guilty, it is the same as being found guilty by a judge. In either case, you may be required to pay a fine and, in addition, your driver license ... may be suspended or revoked as prescribed by law." (Ticket No. 4052404956.) On November 10, 2000, the plaintiff appeared for a hearing on the speeding ticket. (Pl.'s Rule 56.1 St. ¶ 1; Defs.' Resp. Rule 56.1 St. ¶ 1.) The hearing was held at the Brooklyn South Traffic Violations Bureau ("TVB") in Coney Island, New York, and the hearing was presided over by Administrative Law Judge Paul D. Shur ("ALJ Shur"). (Defs.' Rule 56.1 St. ¶ 6; Shur Affirm. ¶¶ 1–2; Transcript of Deposition of Paul. D. Shur dated Mar. 25, 2003 ("Shur Dep.") at 11.)

ALJ Shur found the plaintiff guilty of speeding. (Pl.'s Rule 56.1 St. ¶ 2; Defs.' Resp. Rule 56.1 St. ¶ 2.) ALJ Shur pointed out to the plaintiff that because this speeding ticket was the plaintiff's third speeding ticket in eighteen months, the plaintiff faced mandatory revocation of his license, which would begin thirty days from that date, on December 10, 2000. (Defs.' Rule 56.1 St. ¶ 8; Transcript of Hearing dated Nov. 10, 2000 ("Hearing Tr.") attached as Ex. B to Shur Affirm. at 21–24.) ALJ Shur informed the plaintiff that he would receive a letter in the mail stating that his license would be revoked as of December 10, 2000. (Pl.'s Rule 56.1 St. ¶ 6; Defs.' Resp. Rule 56.1 St. ¶ 6.) ALJ Shur imposed a $275 fine, which the plaintiff was required to pay by November 24, 2000. (Pl.'s Rule 56.1 St. ¶ 2; Defs.' Resp. Rule 56.1 St. ¶ 2.) At the conclusion of the hearing, ALJ Shur instructed the plaintiff to see the cashier. (Hearing Tr. 27–28.) According to the DMV's procedural and training manual, ALJs should warn motorists if convictions on tickets could result in suspension of their licenses. (Pl.'s Rule 56.1 St. ¶ 23; Defs.' Resp. Rule 56.1 St. ¶ 23.)

There is no evidence that the plaintiff visited the cashier following the hearing, and the plaintiff does not claim that he did so. (Defs.' Rule 56.1 St. ¶ 11; Shur Affirm. ¶¶ 9–10.) In instances like this, where a motorist fails to pick up a bill from the cashier following a conviction, the DMV computer is programmed to mail out a "Notice of Fine and Surcharge Payment Due" ("Notice of Fine") to the address on the speeding ticket. (Defs.' Rule 56.1 St. ¶ 12; Shur Affirm. ¶ 9.) The Notice of Fine generated after the plaintiff's speeding conviction on November 10, 2000 stated that if the plaintiff failed to pay his fine by November 24, 2000, his driver's license would be suspended from that date until full payment was made. (Defs.' Rule 56.1 St. ¶ 13; "Notice of Fine and Surcharge Payment Due" attached in Ex. I to Fleischmann Affirm. and as Ex. B to Pl.'s Mot. Summ. J.) The Notice of Fine stated that such a suspension is authorized by Section 227(3) of the New York State Vehicle and Traffic Law. (*Id.*)

The plaintiff was not informed at the November 10, 2000 hearing that he would receive the Notice of Fine if he failed to pick up his bill from the cashier, and he was not told that his license would be suspended if he failed to pay the bill by November 24, 2000. (Pl.'s Rule 56.1 St. ¶ 4; Defs.' Resp. Rule 56.1 St. ¶ 4.) The plaintiff denies ever receiving the Notice of Fine in the mail, but he conceded at his deposition that the Notice of Fine did contain his correct home address. (Defs.' Rule 56.1 St. ¶ 13; Evans Dep. at 29.) The plaintiff did receive a letter informing him that his licensed would be revoked on December 10, 2000 as a result of having received three speeding tickets in eighteen months. (Pl.'s Rule 56.1 St. ¶ 7; Defs.' Resp. Rule 56.1 St. ¶ 7.)

On November 14, 2000, the plaintiff went to the Brooklyn North Traffic Violations Bureau and pleaded guilty to two other outstanding speeding tickets. (Pl.'s Rule 56.1 St. ¶ 8; Defs.' Resp. Rule 56.1 St. ¶ 8.) After pleading guilty, the plaintiff went to the DMV cashier. (Pl.'s Rule 56.1 St. ¶ 9; Defs.' Resp. Rule 56.1 St. ¶ 9.) The parties disagree whether the plaintiff requested to pay all of his fines—including the one imposed by ALJ Shur on November 10, 2000—or simply the two fines imposed that day. The plaintiff testified that he asked the cashier whether he was paying "everything," because he wanted to "[m]ake sure [he] was paying all [his] fines." The DMV cashier allegedly responded, "From what she had, yes." (Evans Dep. attached as Ex. C to Pl.'s Mot. Summ. J. at 34.) By contrast, Norma Lamboy, the DMV cashier who dealt with the plaintiff that day, testified that the plaintiff "kept insisting that he wasn't interested in taking care of . . . the ticket from Coney Island." (Transcript of Deposition of Norma Lamboy dated Jan. 27, 2003 attached as Ex. G to Fleischmann Affirm. at 16; see also Pl.'s Rule 56.1 St. ¶ 11; Defs.' Resp. Rule 56.1 St. ¶ 11.)

It is undisputed that on November 14, 2000 the plaintiff paid the cashier a total of $610 with his credit card. (Pl.'s Rule 56.1 St. ¶ 10; Defs.' Resp. Rule 56.1 St. ¶ 10.) The bill plainly lists the two tickets disposed of on November 14, 2000, and not the earlier ticket for which he received the fine on November 10, 2000, and the plaintiff's credit card receipt also does not refer to the fine imposed by ALJ Shur on November 10, 2000. (Defs.' Rule 56.1 St. ¶ 21; Bill and Credit Card Receipt dated Nov. 14, 2000 attached as Ex. K to Fleischmann Affirm.) On November 24, 2000, the plaintiff's New York State driver's license was suspended for failing to pay the fine imposed by ALJ Shur. (Pl.'s Rule 56.1 St. ¶ 12; Defs.' Resp. Rule 56.1 St. ¶ 12.)

On November 27, 2000, the plaintiff was arrested in the Bronx, New York, for driving a motor vehicle with a suspended license, in violation of New York Vehicle and Traffic Law § 511(1)(a). (Pl.'s Rule 56.1 St. ¶ 13; Defs.' Resp. Rule 56.1 St. ¶ 13; Arrest Report attached in Ex. I to Fleischmann Affirm.) The plaintiff was given a desk appearance ticket following his arrest. (Defs.' Rule 56.1 St. ¶ 26; Evans Dep. at 25–26.) On November 29, 2000, the plaintiff went to the Brooklyn North TVB and paid the fine imposed by ALJ Shur. (Pl.'s Rule 56.1 St. ¶ 14; Defs.' Resp. Rule 56.1 St. ¶ 14.)

When a motorist pays a fine and clears a suspension that was imposed for failure to pay the fine, the TVB does not notify the district attorney that payment has been made. (Defs.' Rule 56.1 St. ¶ 32; Shur Affirm. ¶ 15.) The plaintiff was arraigned on the charges of driving with a suspended license on January 22, 2001. (Defs.' Rule 56.1 St. ¶ 33; Second Am. Compl. ¶ 20.) The case was adjourned to February 28, 2001. Thereafter, the Bronx District Attorney's Office requested an abstract of the plaintiff's DMV record. The abstract,

which was printed on February 13, 2001, showed that the plaintiff's license was suspended on November 24, 2000 for "failure to pay fine" and that the suspension was cleared on November 29, 2000—"scofflaw paid." (Defs.' Rule 56.1 St. ¶¶ 34–35; Abstract attached in Ex. I to Fleischmann Affirm.) On February 28, 2001, the Bronx District Attorney's Office requested a dismissal of the charges against the plaintiff for driving with a suspended license, and the charges were dismissed. (Pl.'s Rule 56.1 St. ¶ 15; Defs.' Resp. Rule 56.1 St. ¶ 15.)

### III

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must satisfy two elements: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)); *see also Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir.1996); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). In this case, there is no dispute that the alleged actions by the defendants arose under color of state law. The plaintiff alleges that he was deprived of constitutional rights afforded by the Fourth and Fourteenth Amendments.

State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, state officers are amenable to suit for damages under § 1983 in their personal capacities, even when the conduct in question relates to their official duties. *Hafer v. Melo*, 502 U.S. 21, 25–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The plaintiff asserts his claims

for damages against the defendants solely in their personal capacities. (Second Am. Compl. ¶ 1.)

### IV

The parties have cross moved for summary judgment on the plaintiff's claim that his driver's license was suspended in a manner that violated the plaintiff's right to procedural due process. The plaintiff claims that he was not given sufficient notice that his license would be suspended if he failed to pay the fine imposed by ALJ Shur, and that he was not given sufficient notice of the procedures by which he could appeal the impending suspension. The defendants contend that the plaintiff received all the process he was due.

To succeed on a procedural due process claim, a plaintiff must establish (1) a deprivation of life, liberty or property; and (2) without due process of law. *Cf. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (describing the "familiar two-part inquiry" in which a court "must determine whether [the plaintiff] was deprived of a protected interest, and if so, what process was he due."); *Narumanchi v. Bd. of Trustees*, 850 F.2d 70, 72 (2d Cir.1988). A driver's license is a protected property interest, and the Due Process Clause thus applies to the deprivation of a driver's license by the State. *See Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("Suspension of issued licenses ... involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.").

"An essential principle of due process [is] that deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the na-

ture of the case.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (*quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Thus, "some kind of hearing" is required, but the nature of the hearing may vary "depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Loudermill,* 470 U.S. at 542, 545, 105 S.Ct. 1487 (internal quotation marks omitted).

■ The plaintiff contends that the process that is due a motorist whose license is suspended for failure to pay a fine is essentially codified in New York Vehicle and Traffic Law ("VTL") § 510(4–a). Section 510(4–a) provides in pertinent part:

Upon receipt of a court notification of the failure of a person ... to pay a fine imposed by a court the commissioner or his or her agent may suspend the driver's license or privileges of such person pending receipt of notice from the court that such person ... has paid such fine. Such suspension shall take effect no less than thirty days from the day upon which notice thereof is sent by the commissioner to the person whose driver's license or privileges are to be suspended.

N.Y.V.T.L. § 510(4–a). The plaintiff points out that the constitutionality of the 30–day period in § 510(4–a) has been upheld. *See Harding v. Melton,* 67 A.D.2d 242, 415 N.Y.S.2d 286, 288 (3d Dep't 1979). The plaintiff contends that because his license was suspended after notice of only fourteen days, the suspension ran afoul of § 510(4–a) and thus violated his right to due process.

However, § 510(4–a) of the VTL does not provide the procedures governing the hearing on the plaintiff's speeding ticket or the eventual suspension of his driver's license for failure to pay the fine imposed. Section 510(4–a), according to its explicit

language, applies when a person fails to pay a fine imposed by a *court. See* N.Y.V.T.L. § 510(4–a). In this case, the plaintiff's hearing was before ALJ Shur in the Brooklyn South TVB, an administrative tribunal. Therefore, a statutory framework entirely separate from § 510(4–a) governed the adjudication of the plaintiff's speeding violation.

■ The TVB was established by Article 2–A of the VTL, which provides that certain traffic violations, including speeding violations, may be adjudicated by administrative tribunals when the violations occur in cities, like New York City, with populations exceeding 200,000. *See* N.Y.V.T.L. § 225(1); *Rosenthal v. Hartnett,* 36 N.Y.2d 269, 367 N.Y.S.2d 247, 326 N.E.2d 811, 812–13 (1975). Section 225(1) of the VTL provides that adjudications in administrative tribunals like the TVB are conducted "pursuant to the regulations of the commissioner." N.Y.V.T.L. § 225(1). Section 227(4)(a), as in effect in November 2000, provided that upon a finding of guilt, the ALJ may impose a fine, and it further provided that "[t]he driver's license or privileges ... may be suspended pending the payment of any penalty so imposed." N.Y.V.T.L. § 227(4)(a). The Commissioner's Regulations implementing these provisions similarly provide that when a fine is not paid immediately, "the driver's license or operating privilege will be suspended ... until full payment is made." 15 N.Y. Comp.Codes R. & Regs. § 125.2(a). The Commissioner's Regulations allow the ALJ, for good cause, to adjourn payment of the fine for up to thirty days following conviction and imposition of the fine. 15 N.Y. Comp.Codes R. & Regs. § 125.2(b). The ALJ does not have authority, however, to delay the effective date of a suspension imposed for failure to pay a fine immediately. *See* N.Y.V.T.L. § 227(6).

The plaintiff's due process claim thus turns on whether the procedures afforded him under this statutory framework comported with the requirements of due process. The plaintiff does not contend that he did not receive notice or that he was not afforded an opportunity to be heard in connection with the hearing before ALJ Shur on November 10, 2000. Nor does he contest the fine imposed by ALJ Shur that day. Rather, the plaintiff maintains that he was not given adequate notice or an opportunity to be heard concerning the suspension of his license for failure to pay the fine imposed by ALJ Shur.

The plaintiff contends that § 510(4–a) of the VTL required that he receive thirty days notice of the fact that his license would be suspended for failure to pay the fine. However, as explained, § 510(4–a) does not apply to the plaintiff's case. Moreover, there is nothing sacrosanct about a thirty-day notice period for the purposes of due process. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (" 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." (internal quotation marks, alterations, and citations omitted)).

The plaintiff was provided notice that his license would be suspended if he failed to pay the fine imposed by ALJ Shur by November 24, 2000. Because the plaintiff did not pay his fine immediately following

his hearing before ALJ Shur, the DMV computer automatically generated and mailed a Notice of Fine to the plaintiff that indicated that the plaintiff's license would be suspended as of November 24, 2000 unless he paid his fine by that date.[3]

The plaintiff maintains that he never received the Notice of Fine, but actual receipt of notice is not required to satisfy due process. When the state deprives an individual of property, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). To determine whether the defendants violated the plaintiff's right to due process, "the proper inquiry is whether the state acted reasonably in selecting the means likely to inform persons affected, not whether each [affected person] actually received notice." *Id.*; *see also Weinstein v. Albright*, No. 00 Civ. 1193, 2000 WL 1154310, at *11 (S.D.N.Y. Aug. 14, 2000), *aff'd*, 261 F.3d 127 (2d Cir.2001). The evidence demonstrates that the Notice of Fine indicating that the plaintiff's license would be suspended in fourteen days if he failed to pay his fine was mailed to the plaintiff following his hearing on November 10, 2000. The plaintiff conceded at his deposition that the Notice of Fine contained his correct home

**3.** The DMV provided the Bronx District Attorney's Office with an Affidavit of Regularity/Proof of Mailing that certifies that the Notice of Fine was sent to the plaintiff according to the DMV's customary procedures and in the regular course of business. (*See* Affidavit of Regularity/Proof of Mailing attached in Ex. I to Fleischmann Affirm.) The plaintiff does not allege that the DMV did not follow its regular mailing procedures in mailing his No-

tice of Fine; rather, he alleges that he never received the Notice of Fine. The Court of Appeals has held that mere denial of receipt does not raise a genuine issue of fact as to mailing where there is proof of the mailing procedures followed in the regular course of business. *See Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir.1993); *McGuire v. City of New York*, 301 F.Supp.2d 333, 335 (S.D.N.Y.2004).

address. While the plaintiff denies receiving the Notice of Fine, the plaintiff's due process right has not been violated because the defendants acted reasonably in providing for the notice to be sent by regular mail to the current address on file. "Under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." *Weigner*, 852 F.2d at 650.[4]

The plaintiff argues that the suspension of his license was, in any event, a "summary" suspension that violated the requirement of a pre-suspension hearing established by *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). However, the purpose of the pre-suspension hearing prescribed by *Bell* is to allow a motorist the opportunity to show that he or she is free from fault and that suspension of the license is unwarranted. *See id.* In this case, however, the plaintiff had a full opportunity to contest his guilt before ALJ Shur.

Therefore, the plaintiff's case is more akin to *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), where the Supreme Court upheld an Illinois statute that provided for summary suspension, based on official records, of the driver's licenses of motorists who had been repeatedly convicted of traffic offenses. As the Court in *Dixon* explained:

> [T]he risk of an erroneous deprivation in the absence of a prior hearing is not great. Under the Secretary's regulations, suspension and revocation decisions are largely automatic. Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the Secretary's attention. In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. Since appellee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations. Such an appearance might make the licensee feel that he has received more personal attention, but it would not serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations.

*Id.* at 113–14, 97 S.Ct. 1723 (citation and footnote omitted).

The same considerations apply in this case, and they reveal that the plaintiff received all the process he was due. Like the habitual offenders in *Dixon*, the plaintiff was afforded a hearing on his underlying speeding violation. He could have appealed his conviction on that offense, but he chose not to do so.[5] He was given fourteen days to pay the fine imposed as a

---

4. Moreover, the plaintiff had notice from the time he received his speeding ticket in April 2000 that a conviction could result in the suspension of his license, because his ticket warned him that in the event of a conviction, "you may be required to pay a fine and, in addition, your driver license ... may be suspended or revoked as prescribed by law."

5. At the beginning of every calendar call for TVB hearings, motorists are notified that they have thirty days to appeal an adverse hearing decision and that appeal forms can be obtained at the cashier's window. (Shur Affirm. ¶ 13.) Moreover, § 228 of the New York Vehicle and Traffic Law outlines a motorist's right to appeal, before a TVB administrative appeals board and in an Article 78 proceeding under the CPLR. N.Y.V.T.L. § 228. The plaintiff does not contend that he was unaware of the procedures by which he could appeal ALJ Shur's determination of his guilt.

result of his conviction, even though he could have been required to pay the fine immediately. The plaintiff was given notice, by means reasonably calculated to reach him, that his license would be suspended if he failed to pay the fine by the specified date.

The plaintiff's argument that the Notice of Fine should have provided additional notice of procedures by which he could appeal or contest the suspension is unavailing. As the Court in *Dixon* noted, where, as here, a motorist's guilt has already been determined in a judicial hearing, and where subsequent license suspensions are largely automatic, "there is the possibility of clerical error, but written objection will bring a matter of that kind" to the DMV Commissioner's attention. *Id.* The plaintiff, like the motorist in *Dixon*, does not dispute the factual basis for his underlying conviction, and indeed did not appeal his conviction. Rather, as in *Dixon*, the plaintiff "is really asserting the right to appear in person to argue that the [Commissioner] should show leniency and depart from his own regulations." *Id.* As the Supreme Court concluded in *Dixon*, such an appearance is not required by the Due Process Clause.

The plaintiff's reliance on *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), is misplaced. In *Memphis Light*, the Supreme Court held that a public utility must inform its customers of the utility's administrative procedures for resolving billing disputes when the utility notifies customers that service is being terminated for nonpayment. The Court subsequently explained that this requirement "relied not on any general principle that the government must provide notice of the procedures for protecting one's property interests but on the fact that the administrative procedures at issue were not described in any publicly available document." *City of West Covina v. Perkins*, 525 U.S. 234, 242, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). The Court concluded that "individualized notice of state-law remedies" is not required when those remedies are "established by published, generally available state statutes and case law." *Id.* at 241, 119 S.Ct. 678. The procedures by which the plaintiff could appeal his speeding conviction and the resulting fine are published in § 228 of the New York Vehicle and Traffic Law. N.Y.V.T.L. § 228. To the extent the plaintiff hoped to convince the Commissioner to depart from established regulations and refrain from suspending his license for failure to pay the fine, then, as the Court observed in *Dixon*, a letter to the Commissioner would have sufficed. *See Dixon*, 431 U.S. at 113, 97 S.Ct. 1723; *cf. Atkins v. Parker*, 472 U.S. 115, 131, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (noting that "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny.") The plaintiff received all the process that was due, and his due process claim is therefore dismissed.[6]

■ The plaintiff's due process claim must be dismissed for the additional reason that he has failed to establish the defendants' personal involvement in the alleged constitutional violations. "It is well settled in this Circuit that personal

---

6. Judge Rakoff recently dismissed similar claims in *McGuire* in the following way: "[T]he Court has also considered plaintiffs' other allegations of still further supposed defects in the DMV procedures, such as the failure to provide 30 days between the mail-

ing of the notice of suspension and the suspension itself and the failure of the notice to specify appeal procedures, but finds them so entirely lacking in merit as not to warrant further discussion." *McGuire*, at 336 n. 4.

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted). Personal involvement for purposes of a § 1983 claim means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Based on the record before the Court, and drawing all inferences in favor of the plaintiff, no reasonable jury could conclude that the plaintiff had established any of these bases for the personal involvement of the defendants.[7]

 The defendants would also be entitled to dismissal of the plaintiff's due process claim on the grounds of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff's right to procedural due process in the suspension of his driver's license was clearly established at the time his license was suspended. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Nevertheless, "even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citations omitted); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993). The Court of Appeals has held that on a summary judgment motion, a defendant is entitled to summary judgment on these grounds when "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ] to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997) (internal citations omitted); *Lennon,* 66 F.3d at 420. For the reasons explained above, based on the record before the Court and drawing all inferences in the plaintiff's favor, no reasonable jury could conclude that the defendants were objectively unreasonable in believing that due process was satisfied by mailing to the plaintiff, following a full hearing adjudicating his guilt, a notice that his license would be suspended if he did not pay the resulting fine within fourteen days. Indeed, the fact that Judge Rakoff

7. In his reply papers on his cross motion for summary judgment, the plaintiff submitted affidavits of six individuals who claim that they never received the notices mailed to them that indicated impending suspensions of their driver's licenses. These arguments were raised in reply and could be rejected on that basis alone. *See, e.g., Abdel–Khalek v. Ernst & Young LLP,* No. 97 Civ. 4514, 1999 WL 190790 at *6 (S.D.N.Y. Apr. 7, 1999) (declining to consider argument raised for the first time in reply papers); *Playboy Enterprises, Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) (stating that "[a]rguments made for the first time in a reply brief need not be considered by a court" and collecting cases), *aff'd,* 159 F.3d 1347 (2d Cir.1998). In any event, six affidavits do not raise a genuine issue of fact concerning the existence of an unconstitutional custom or practice, when the DMV sent out notices of impending suspensions to over 900,000 motorists over the four fiscal years ending March 31, 2003, and over 200,000 such notices in fiscal year 2000 alone. (*See* Decl. of Holly Thompson dated Aug. 19, 2003, ¶ 3.)

and the Court have both concluded that the procedures followed with respect to mailing notices of suspension do comport with the requirements of due process is strong support for the conclusion that it was not objectively unreasonable for the defendants to believe that they were not acting in a fashion that violated clearly established federally protected rights.

The defendants' motion for summary judgment on the plaintiff's due process claim is therefore granted.

## V

■■■ The parties have also made cross motions for summary judgment on the plaintiff's false arrest and malicious prosecution claims. The plaintiff alleges that the defendants, "via their subordinates," permitted the plaintiff to be arrested, imprisoned, and prosecuted.[8] The plaintiff asserts that the defendants provided false information to the New York City Police Department and to the Bronx District Attorney's Office concerning the status of the plaintiff's driver's license, and that they thereafter withheld exculpatory information-namely, the fact that the plaintiff paid his fine on November 29, 2000.

The Second Amended Complaint is unclear as to whether the plaintiff is raising the false arrest and malicious prosecution claims under federal law, state law, or both. However, "[t]he elements of false arrest and malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d

Cir.2003) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.1992)). Therefore, the analysis of the claims is the same whether they are brought under state or federal law. *Id.*

■■■ According to the Court of Appeals, a " § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852 (citations omitted). Moreover, "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) (internal quotation marks omitted). The existence of probable cause may be determined "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. The plaintiff was arrested on November 27, 2000 for driving with a suspended license. The plaintiff was arrested because the DMV computer records reflected that the plaintiff's license had been suspended for failure to pay his fine. There is no evidence that the information on the computer was false or inapplicable.[9]

---

8. To the extent that the plaintiff also asserts a false imprisonment claim, that claim is no different from his false arrest claim. "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir.1999) (Glasser, J., dissenting); *see also Weyant v. Okst*, 101 F.3d

845, 853 (2d Cir.1996) (describing false arrest as "a species of false imprisonment").

9. The plaintiff contends that the information on the computer should have reflected that, as he alleges, he tried to pay all of his outstanding fines on November 14, 2000. Even if an "attempt" to pay the fine had been recorded, and there is no reason such information would be required to be recorded, it

Therefore, there was probable cause for the plaintiff's arrest, and his false arrest claim is dismissed. *See McGuire,* 2004 WL 250505, at *3 (collecting cases); *Johnson v. Harron,* No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

■■■■ The plaintiff's malicious prosecution claim must also be dismissed. "Section 1983 liability may also be anchored in a claim for malicious prosecution as this tort 'typically implicates constitutional rights secured by the fourteenth amendment, such as deprivation of liberty.'" *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994) (quoting *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir.1991)). To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty. *See Singer,* 63 F.3d at 116.

■■■■ "In order to state a claim for the tort of malicious prosecution under New York State law," the law that is applicable here, "a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997) (quoting *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995)); *Boyd,* 336 F.3d at 76.

The malicious prosecution claim fails because probable cause existed for the prosecution in the same way that it existed for the arrest, as explained above. In mid-February 2001, the Bronx District Attor-

ney's Office obtained an abstract of the plaintiff's DMV record that showed that the plaintiff paid his fine two days after he was arrested for driving with a suspended license and that confirmed that his license was suspended on the date of his arrest. The fact that the District Attorney's Office thereafter chose not to pursue the prosecution did not negate the probable cause that had existed.

■■■■ In any event, the plaintiff's malicious prosecution claim against the defendants must be dismissed because the plaintiff has failed to submit evidence from which a reasonable jury could conclude that the defendants were personally involved in his prosecution. The plaintiff contends that it was the custom and policy of the DMV not to inform the district attorney when individuals, like the plaintiff, paid fines and reinstated previously suspended licenses. However, the fact that the plaintiff paid the fine was reflected on the abstract of the plaintiff's DMV record, and the plaintiff has submitted no evidence that the defendants encouraged or instigated the continued prosecution of the plaintiff despite the fact that he had paid his fine. Indeed, the prosecution was dismissed as soon as the district attorney requested the DMV file and learned that the plaintiff had paid his fine.

■■■■ The plaintiff's malicious prosecution claim must also be dismissed because no reasonable jury could conclude, based on the record before the Court, that the defendants acted with actual malice. The plaintiff asserts that the DMV's failure to alert the district attorney of the fact that he had paid his fine is sufficient evidence to infer the defendants' malicious intent. No reasonable jury could conclude that

---

would not have changed the fact that the fine imposed on November 10 was not paid by November 24, and that the plaintiff's license

was appropriately suspended. Probable cause still would have existed for the plaintiff's arrest.

this evidence is sufficient to establish actual malice.

Therefore, the defendants' motion for summary judgment on the plaintiff's false arrest and malicious prosecution claims is granted.

### CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is granted, and the plaintiff's cross motion for summary judgment is denied. The Clerk is directed to enter Judgment dismissing the Complaint and closing this case.

**SO ORDERED.**