James MCGUIRE III, et. al., Plaintiffs,

v.

The CITY OF NEW YORK, et. al., Defendants.

No. 03 CIV. 1182(JSR).

United States District Court, S.D. New York.

Feb. 11, 2004.

334

David Zelman, Esq., Eric Broutman, Esq., Law Office of David Zelman, New York City, for Plaintiffs.

Jennifer Rossan, Assistant Corporation Counsel, Corporation Counsel of the City of New York, Elizabeth Forman, Lewis A. Polishook, Assistant Attorney General, Attorney General of the State of New York, New York City, for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

The plaintiffs here are ten motorists from, variously, New York, New Jersey, and Pennsylvania who were arrested in New York between 2001 and 2003 for driving with suspended licenses in violation of section 511(1) of the New York State Vehicle and Traffic Law. *See* First Amended Class Action Complaint for Declaratory and Injunctive Relief and Damages ("Complaint") ¶¶ 2, 9–16. That section reads in pertinent part:

> A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.

N.Y. Veh & Tr. L § 511(1)(a). Plaintiffs allege that they were unaware that their licenses were suspended and that they were arrested because the arresting officers, in accordance with the practice of the New York City police department, relied entirely on records of the New York State Department of Motor Vehicles ("DMV") showing that plaintiffs' licenses had been suspended. Complaint ¶¶ 2, 17. Plaintiffs claim that this was an insufficient basis to give the arresting officers probable cause to believe that the plaintiffs had the scienter required for violation of § 511(1), because the DMV records did not show that plaintiffs had received actual notice of their suspensions. Plaintiffs further allege that even assuming the police officers had reason to believe such notice had been given, in actuality the DMV failed to take the steps that were necessary to provide such notice in a manner reasonably calculated to reach the plaintiffs. Complaint ¶¶ 145–152. On these grounds, plaintiffs allege that the constitutional rights of plaintiffs and others similarly situated were violated by the arresting officers,

their superiors (*i.e.*, the New York City Police Commissioner and the Mayor of New York), the City of New York, and the Commissioner of the DMV (Raymond Martinez), Complaint ¶¶ 18–26. Plaintiffs seek both damages and injunctive relief, as well as class certification. Complaint at 28 ("Relief Requested").

Following extensive discovery, briefing, and oral argument, the Court granted summary judgment in favor of the arresting officers, the Mayor, the Police Commissioner, and the DMV Commissioner on grounds of qualified immunity, as well as on various other grounds particular to certain of these defendants. *See* transcript, October 9, 2003, at 10–11, 20.[1] The Court reserved, however, on the plaintiffs' remaining claim against the City, which asserted that the City's practice of arresting persons for violation of § 511(1) based solely on a computer check of DMV suspension records violated 42 U.S.C. § 1983. The Court now grants summary judgment in favor of the City of New York on that claim as well. Relatedly, the Court here sets forth an additional ground for its previous determination granting summary judgment in favor of the DMV Commissioner.

The pertinent facts, either undisputed or, where disputed, taken most favorably to the plaintiffs, are as follows. When a motorist is stopped by New York City police for traffic violations or the like, the police routinely run a computerized check of the DMV's records relating to the motorist's license. If the records show that the motorist's license is suspended—which may occur for any of various reasons, including failure to pay traffic fines or respond to traffic summonses, cancellation of vehicle liability insurance, or commission

of a fraudulent act—the police will routinely arrest the motorist for driving with a suspended license in violation of § 511(1).

In determining probable cause for such an arrest, the police presume, based on routine DMV practices, that the motorist has received notice of the suspension. Specifically, it is the DMV's practice to mail notification of the suspension to the most recent address of the motorist known to the DMV. For example, in the case of a suspension resulting from failure to respond to a traffic summons, the notice of suspension is sent to the address that appears on the summons itself as obtained from the motorist at the time the summons was issued, unless the motorist has thereafter supplied a more recent address to the DMV. Declaration of Holly Thompson ("Thompson Decl."), dated August 29, 2003 at ¶¶ 5,9. In the case of a suspension based on cancellation of liability insurance, the notice of suspension is sent to the most recent address in the DMV's records for the motorist's automobile registration. Declaration of Adria Denisulk ("Denisulk Decl."), dated August 29, 2003 at ¶ 13. In the case of a suspension based on commission of a fraudulent act, the notice of suspension is sent to the most recent address the DMV has on file anywhere in its records. Declaration of Elizabeth Carpenter ("Carpenter Decl."), dated August 29, 2003 at ¶ 4.

■ Addressing, first, the constitutional adequacy of these notice procedures, it is well-established that notice by mail is ordinarily sufficient to comply with due process. *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950). While plaintiffs purport to question whether the suspension notices were even mailed to them, their sole basis

---

1. Previously, the Court had denied plaintiffs' motion to certify the class but without prejudice to their renewing the motion, *see* transcript, July 15, 2003, at 7. Although plaintiffs

subsequently renewed their class certification motion, this Court's instant dismissal of the entire Complaint renders that motion moot.

for this assertion is the fact that they purportedly did not receive the notices. *See* Plaintiffs' Counter Statement to Defendant Martinez's Local Civil 56.1 Statement ("Pl. CS 56.1") at ¶ 22. However, quite aside from fact that this is contradicted as to at least two plaintiffs by the deposition testimony of the plaintiffs themselves, *see* Compendium of Exhibits Submitted in Support of Defendant Raymond P. Martinez's Motion for Summary Judgment, Deposition of James McGuire, Aug. 14, 2003 (Exhibit 51 at 74–76), Deposition of Jorge Nunez, Aug. 7, 2003 (Exhibit 52 at 58–59), the Second Circuit has held that mere denial of receipt does not create an issue of fact as to mailing if regular office procedures were followed. *Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir.1993). Here, the DMV has introduced undisputed evidence that its regular office procedure is to mail out notices of every suspension, *see, e.g.,* Thompson Decl. ¶ 9; Denisulk Decl. ¶¶ 11–13; Carpenter Decl. ¶ 4.

■ Plaintiffs fall-back position is that, even if the DMV's practice of mailing notices otherwise complies with due process, it is constitutionally defective because it fails to adequately keep track of changes of addresses (which plaintiffs hypothesize is the most likely reason some of them failed to get their suspension notices), *see* Memorandum of Law in Opposition to Defendant Martinez's Motion for Summary Judgment, 3–5. However, this argument ignores the fact that New York law reasonably places the burden of keeping the State aware of address changes on the motorists themselves. Specifically, section 505 of the Vehicle and Traffic Law provides that:

> It shall be the duty of every licensee to notify the commissioner in writing of any change of residence of such licensee within ten days after such change occurs and to make a notation of such change of residence on such license in the place provided by the commissioner.

N.Y. Veh. & Tr. § 505(5).[2]

Thus, plaintiffs' claim as to the allegedly defective notification procedures of the DMV reduces, in the end, to a contention that the State may not simply rely on this statutory mandate to motorists to notify the DMV of any changes of address, but that, instead, the State is constitutionally obligated to initiate some independent or supplemental inquiry of its own. Neither precedent nor common sense supports this novel assertion.[3]

Accordingly, since the plaintiffs have not raised a genuine issue of constitutional defect with respect to the notification procedures of the DMV, their claim against DMV Commissioner Martinez, which has already been dismissed from the bench on other grounds, *see supra,* must be dismissed on this ground as well.[4]

---

2. The same is true as to vehicle registrants. N.Y. Veh. & Tr. L. § 401(3)(a).

3. Subordinately, plaintiffs claim that at least some such burden should be shouldered by the State with respect to out-of-state residents (including three of the ten plaintiffs here), who arguably are not statutorily required to update their address changes once they obtain out-of-state licenses. But these licensees, having committed the violations that led to their New York licenses being suspended, can hardly complain if, because of their own failure to voluntarily notify the DMV of their new out-of-state residence and license, they there-

by create the very situation where the DMV's records will continue to list them as New York addressees whose licenses have been suspended. More generally, as defendants point out, due process surely does not require the State to undertake a continuing 50–state search for the new addresses of New York suspended motorists who have now moved out-of-state.

4. In so ruling, the Court has also considered plaintiffs' other allegations of still further supposed defects in the DMV procedures, such as the failure to provide 30 days between the mailing of the notice of suspension and the

Moreover, even if the DMV procedures were somehow defective, this would not prevent dismissal of the only remaining count, *viz.*, plaintiffs' claim that the City of New York's practice of arresting persons for violation of section 511(1) of the Vehicle and Traffic Law solely on the basis of computer checks of DMV records showing the drivers' suspensions is constitutionally defective because the police lack probable cause to infer scienter. Plaintiffs have not adduced any admissible evidence that the arresting police, or the City police force in general, is aware of the defects plaintiffs allege against the DMV notification system. Thus, an arresting officer has every reason to believe that the motorist has received adequate notice through the mail that the motorist's license has been suspended. This is more than sufficient to provide probable cause for the police to infer that the motorist either knows or at least has "reason to know" that the motorist's license has been suspended—which is all that § 511(1) requires. *See Mahase v. City of New York*, 96 Cv. 6105, 2000 WL 263742, *3, 2000 U.S. Dist. LEXIS 2046, *8–9 (E.D.N.Y. Jan. 5, 2000) (rejecting argument that arresting officer lacked probable cause as to the intent requirement of § 511 and holding that "[a] computer printout showing that [plaintiff] was driving with a suspended license is 'reasonably trustworthy information' that she knew her license was suspended"); *Verdin v. City of New York*, 97 Cv. 1044, 1998 U.S. Dist. LEXIS 19387, * 9 (E.D.N.Y. Oct. 26, 1998) (same). *See also Mayer v. City of New Rochelle*, 01 Civ. 4443, 2003 WL 21222515, *5, 2003 U.S. Dist. LEXIS 8761, *18 (S.D.N.Y. May 27, 2003).[5]

suspension itself and the failure of the notice to specify appeal procedures, but finds them so entirely lacking in merit as not to warrant further discussion.

Accordingly, for the foregoing reasons, as well as those previously stated from the bench, the Court grants summary judgment to defendants and dismisses the Complaint in its entirety, with prejudice. Clerk to enter judgment.

SO ORDERED.

5. Again, the Court has also considered plaintiffs' other arguments and allegations regarding the City but finds them too meritless to warrant further discussion.