James T. McGUIRE III, Zohar Hod, Paul Cardone, Cathy Layne, Jose Rivera, Yisroel Brown, Jorge Nunez, Yefim Zubarev, Paul Anspach and Romas McGee, individually and on behalf of all other similarly situated, Plaintiffs–Appellants,

v.

CITY OF NEW YORK, Michael R. Bloomberg, Mayor of New York City, Raymond W. Kelly, New York City Police Commissioner, Raymond P. Martinez, individually and as Commissioner of the New York State Department of Motor Vehicles, Patricia A. Stapleton, New York City Police Officer Shield Number 23276, Alex Dubeau, New York City Police Officer Shield Number 10948, Luis Vega, New York City Police Officer Shield Number 09526, and Jane/John Doe, Police Officers Numbers 1–200, Defendants–Appellees.

No. 04–1287.

United States Court of Appeals, Second Circuit.

June 30, 2005.

Carolyn A. Kubitscheck, Lanser & Kubitscheck, New York, New York (David A. Zelman, New York, New York, on the brief), for Plaintiffs–Appellants.

Fay S. Ng, (Elizabeth S. Natrella, on the brief), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York, for City Defendants–Appellees.

Lewis A. Polishook, Assistant Attorney General, (Michelle Aronowitz, Deputy Solicitor General, on the brief), for Eliot Spitzer, Attorney General of the State of New York, for Defendant–Appellee Raymond P. Martinez.

PRESENT: RAGGI, WESLEY, Circuit Judges, DRONEY, District Judge.[1]

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on February 18, 2004, is hereby AFFIRMED.

Plaintiffs, each of whom was arrested in New York City for the unlicensed operation of a motor vehicle in the third degree pursuant to N.Y. Vehicle & Traffic Law § 511(1),[2] appeal from an award of summary judgment dismissing their § 1983 complaint against (1) the city defendants for an alleged unconstitutional policy of arresting motorists for § 511 violations without probable cause to believe that the motorists knew that their driver's licenses had been suspended, and (2) state defendant Martinez for an unconstitutional policy of suspending driver's licenses without affording motorists adequate notice as required by due process. We assume the parties' familiarity with the facts and the record of proceedings, which we discuss only as necessary to explain our decision to affirm.

### 1. Standard of Review

We review an award of summary judgment *de novo*, and we will affirm only if the record, viewed in the light most favorable to the non-moving party, reveals "no genuine issue as to any material fact" and supports a conclusion that "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir.2003).

### 2. False Arrest

■ Plaintiffs challenge the constitutionality of a New York City policy that allegedly requires police officers to arrest

[1] The Honorable Christopher F. Droney, of the United States District Court for the District of Connecticut, sitting by designation.

[2] N.Y. Vehicle & Traffic Law § 511(1) states, in relevant part:
  (a) A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such a person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.

motorists for § 511 violations whenever a Department of Motor Vehicles ("DMV") check reveals a suspended license. They submit that such arrests are not supported by probable cause to believe that the motorists knew of their licenses' suspension. Like the district court, we conclude that this Fourth Amendment claim fails as a matter of law.

" 'Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.' " *Id.* at 75–76 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)). It is "a fluid concept," *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that depends not on "absolute certainty," *Boyd v. City of New York*, 336 F.3d at 76, but on "fair probability," *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir.2004). Mindful of this standard, this court has recognized that, when an officer has evidence that a defendant has engaged in conduct proscribed by law—whether transporting a quantity of drugs, possessing a stolen item, or driving with a suspended license—he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial. *See Krause v. Bennett*, 887 F.2d 362, 370–71 (2d Cir.1989); *see also Boyd v. City of New York*, 336 F.3d at 76. The conclusion derives from the practical realization that an officer frequently has "no reason to know at the time" he observes a person engaged in proscribed conduct what is in the person's mind. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir.1996). It is further supported by the law's general recognition that "[t]he fact that an innocent explanation may be consistent with the facts as alleged ... does not negate probable cause." *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir.2004) (alteration in original, internal quotation marks omitted).

In this case, there is no dispute that, at the time of arrest, each defendant had been operating a motor vehicle although state DMV records indicated the suspension of his or her driver's license. Moreover, there is no dispute that traffic summonses issued by New York inform drivers that a failure to respond to the summons may result in the loss of a driver's license or the privilege to drive in New York. From these circumstances, we conclude, as did the district court, that a police officer, upon ascertaining from a DMV check that a motorist's license has been suspended, is not required to make further inquiry as to guilty knowledge to make a lawful § 511 arrest. The "implications of the information" gleaned from the DMV, together with the warning included on New York summonses, establish probable cause to arrest these motorists. *Krause v. Bennett*, 887 F.2d at 371; *see Boyd v. City of New York*, 336 F.3d at 75–76; *Lowth v. Town of Cheektowaga*, 82 F.3d at 570.

Accordingly, the complaint against the city defendants was properly dismissed.

### 3. *Due Process*

██ Plaintiffs' due process challenge to New York's license suspension policy has metamorphized several times in the course of this litigation. By oral argument, it appears to have reduced to a claim that the lack of a New York policy for providing further notice to persons whose initial suspension notices were returned as undeliverable violates due process.

The law recognizes issued driver's licenses to constitute a property interest that cannot be suspended without the procedural due process protection of adequate

notice. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Mailed notice is generally deemed sufficient for this purpose. *See Weigner v. City of New York,* 852 F.2d 646, 650 (2d Cir.1988); *accord Akey v. Clinton County, N.Y.,* 375 F.3d 231, 235 (2d Cir.2004). In this case, plaintiffs insist that they never received any mailed notice from the DMV regarding the suspension of their license. As a rule, a presumption of receipt applies to properly addressed notices mailed in accordance with regular office procedures. *See Akey v. Clinton County,* 375 F.3d at 235 (citing *Meckel v. Cont'l Res. Co.,* 758 F.2d 811, 817 (2d Cir.1985)). Plaintiffs note that this presumption does not apply where a defendant knows that the addressee does not reside at the address to which notice was mailed. *See Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *Sterling v. Envt'l Control Bd. of New York,* 793 F.2d 52, 57 (2d Cir.1986). Plaintiffs do not charge the DMV with a policy of deliberately misaddressing suspension notices. Instead, they submit that the DMV deliberately ignores knowing whether a suspension notice was misaddressed by failing to keep track of those that are returned to the department as undeliverable, and it provides no alternative notice in such cases.

Preliminarily, we note that suspension notices could be returned to the DMV for a number of reasons: the motorist may have moved from the residence reflected in DMV records; the motorist may have failed to write his address correctly on the space provided on a DMV summons; or human error at the DMV may have resulted in a misaddressed summons. As the district court correctly observed, New York provides for the first possibility by imposing the burden on motorists and vehicle registrants to inform the DMV of any change of residence "within ten days" and to note the change on their driver's licenses. N.Y. Veh. & Tr. §§ 401(3)(a); 505(5).

To the extent plaintiffs contend that due process nevertheless prohibits the state from taking adverse action in cases of returned notices, we conclude that the point merits little discussion because New York does not rely simply on DMV mailings to satisfy its notice obligation with respect to license suspensions. It provides motorists with personal notice of the possible suspension of their licenses when it issues them summonses.

It is undisputed that plaintiffs Layne, Anspach, Cardone, Brown, Rivera, and McGee all received traffic violations summonses notifying them that "failure to answer will result in suspension of your license and a default judgment against you." Whatever complaints these plaintiffs may have about the disposition of these summonses, they cannot claim that it is the state's failure to develop a policy with respect to undelivered suspension notices that deprived them of due process.

While it is undisputed that similar summonses were issued in the names of plaintiffs Hod and Zubarev, these individuals deny personal receipt, implying that they are the victims of motorist impersonation.[3] Due process, however, does not demand notice that eliminates all risk of non-receipt; it demands notice " 'reasonably certain to inform those affected.' " *Weigner v. City of New York,* 852 F.2d at 649

---

3. The record indicates that Zubarev at one time denied receiving his summons at all, thus suggesting the summons was issued to someone else. It is to that suggestion that this analysis is directed. If, as Zubarev appears to maintain in the reply brief, he received and responded to the summons, his complaints about subsequent proceedings, like those of Layne, Anspatch, Cardone, Brown, Rivera, and McGee, fail to relate to a purported deficiency in the DMV's handling of undeliverable notices of suspension.

(quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (recognizing that "constitutional law like other mortal contrivances has to take some chances" (internal quotations omitted))). Personal delivery of a summons is such an obviously effective means of notice, and the risk of motorist impersonation is so small, that, even though further mailed notice before final suspension may be commendable, we cannot conclude that it is constitutionally compelled. Much less can we conclude that, when mailed notice supplements personal notice, due process demands that the state devise a procedure for renotifying persons whose mailed notice is returned as undeliverable. *See id.* at 652. Accordingly, because Hod and Zubarev cannot challenge the adequacy of the summons notice in their cases, they cannot complain about the purported inadequacy of the DMV's policy for dealing with returned mailed notices.

Although the due process claims of plaintiffs McGuire and Nunez arise in slightly different contexts, they too fail to state a due process claim based on undeliverable mailed notices. Plaintiff McGuire concedes that he received mailed notice at a Manhattan residence that his license would be suspended if he failed to follow certain directives. Plaintiff Nunez accepted a license suspension as a penalty for submitting a false application to the DMV. Whatever complaints these plaintiffs may have about the direction or content of subsequent DMV mailings, they cannot claim that they lacked notice that their licenses would be or had been suspended. Nor can they claim a reasonable belief that they had taken the steps necessary to avoid or lift suspension.

The wisdom of the DMV's lack of a returned notice policy may certainly be questioned, particularly given the inevitability of some human error in a process that sends tens of thousands of notices to motorists. Nevertheless, because the record demonstrates that the plaintiffs in this case were afforded process reasonably calculated to inform them that their licenses would be suspended, the district court properly dismissed the complaint against state defendant Martinez.

Accordingly, we affirm the judgment of the district court dismissing the complaint as against all defendants.