Alexander BRIUKHAN, Plaintiff,

v.

The CITY OF NEW YORK, et al., Defendant.

12 Civ. 6014(ILG)(RML)

United States District Court, E.D. New York.

Signed October 19, 2015

**58**

Michael Joseph Redenburg, Michael J. Redenburg Esq. PC, New York, NY, for Plaintiff.

Dustin Peter Mansoor, Rhiana L. Swartz, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendant.

### MEMORANDUM AND ORDER

GLASSER, Senior United States District Judge:

On July 8, 2011, Plaintiff Alexander Briukhan was arrested for driving with a suspended license and driving under the influence of alcohol. He was indicted the next day, though the charges were ultimately dismissed. About one week after dismissal of his criminal case, Briukhan brought this suit, pursuant to 42 U.S.C. § 1983, against the City of New York and the New York Police Department officers who arrested him—Richard Terzian and Brian Fesinstine. Briukhan alleges that Terzian and Fesinstine violated his civil rights during the July 2011 traffic stop, arrest, and ensuing prosecution. Defendants have moved, pursuant to Fed. R. Civ. P. 56, for summary judgement on all claims. For the reasons described below, their motion is GRANTED.

### BACKGROUND

The following facts are undisputed. Officers Terzian and Fesinstine pulled Briukhan over at around 11:40 p.m. on July 8, 2011 on the westbound side of the Belt Parkway for changing lanes without a turn signal, in violation of N.Y. Veh. & Traf. Law ("VTL") § 1110. At Terzian's request, Briukhan exited the car and agreed to two breathalyzer tests conducted on a portable breathalyzer device. The tests showed Briukhan's blood alcohol content as .069% and .075%. During the traffic stop, the officers also ran a computerized check of Briukhan's driver's license and discovered it was suspended.

At around midnight, the officers arrested Briukhan for driving while under the influence of alcohol and with a suspended license. They took him into custody at the 78th Precinct, where they videotaped him completing coordination tests and another breathalyzer test. That breathalyzer test, taken at 12:37 a.m. on July 9, measured Briukhan's blood alcohol content level at 0.114%. According to the coordination

tests, Briukhan's speech was clear, his balance was steady, and he was able to put his finger to his nose. After receiving his *Miranda* rights, Briukhan stated that he drank one glass of wine around 1:00 p.m. that day and that he had not eaten since noon.

Briukhan was arraigned on July 9, 2011, for failing to comply with a traffic control sign, VTL § 1110, failing to use his turn signal before changing lanes, VTL § 1163, driving with a suspended license, VTL § 511(1)(a), and driving under the influence of alcohol, VTL § 1192. Officer Terzian prepared and signed the criminal complaint. After his arraignment, Briukhan was released, though he appeared periodically in court over the next five months. On November 28, 2012, all charges were dismissed on speedy trial grounds.

That concludes the core of undisputed facts. As expected, the parties' narratives diverge in some respects. First, they disagree about the reason for the traffic stop. The officers maintain that they pulled Briukhan over because his car was "swerving between the right and center lane," "t[aking] up the right and center lane, as far as a distance of approximately 250 feet[,]" and "fail[ing] to signal from the right lane into the center lane." (Terzian Dep. 22:21–23:13, ECF No. 20–3.) Briukhan testified that he was pulled over "for nothing" or for "that Bentley" (Briukhan Dep. 70:15–18, ECF No. 20–5).[1]

The parties also disagree about whether Briukhan exhibited signs of intoxication. Terzian testified that during the traffic stop Briukhan smelled of alcohol, had bloodshot and watery eyes, and a flushed face. (Terzian Dep. at 53:4–7; IDTU Paperwork at 1, ECF No. 20–9.) He also asserts that throughout the coordination tests back at the precinct—which Briukhan largely passed—Briukhan showed signs of alcohol consumption. (Terzian Dep. at 57:19–25; IDTU Paperwork at 3, ECF No. 20–9.) For his part, Briukhan disputes that he ever acted intoxicated. He testified that he had one glass of wine at lunch on July 8, and nothing to drink after that. (Briukhan Dep. at 43:5–7.) He also asserts that he never smelled of liquor or showed signs of intoxication. (Briukhan Dep. at 70:18–19.)

Plaintiff initiated this litigation on December 6, 2012. He alleges six causes of action—false arrest, unlawful stop and search, fabrication of evidence, malicious prosecution, failure to intervene, and municipal *("Monell")* liability—arising from the traffic incident, his subsequent arrest, indictment, and prosecution.

## DISCUSSION

### I. Legal Standard

Summary judgement is appropriate only where "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a). However, mere "conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.2010) (citation omitted). Accordingly, the non-movant "may not rely on mere speculation or conjecture as to the true

---

1. Briukhan initial statement—"because that Bentley"—is expounded in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, where he asserts that he was pulled over "because his vehicle 'stood out,' being a high-end luxury automobile, drawing attention[.]" (Pl.'s Mem. In Opp'n to Defs.' Mot. for Summ. J. 12, ECF No. 22.) On a summary judgement motion, a court must

"construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (citation omitted). Therefore, this Court assumes that Briukhan intended to communicate the later statement in his initial testimony.

nature of the facts to overcome a motion for summary judgment[.]" *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995) (citation omitted). Moreover, the party "asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

## I. Analysis
### A. Unlawful Stop

A traffic stop comports with the Fourth Amendment so long as police had probable cause to believe that a traffic violation occurred. *United States v. Stewart,* 551 F.3d 187, 191 (2d Cir.2009). Even a "minor" traffic violation may constitute a "specific and articulable fact" sufficient to provide probable cause for the stop. *United States v. Scopo,* 19 F.3d 777, 781–82 (2d Cir.1994). This rule gives police leeway in situations where "harm can be caused quickly and delay might vitiate the effectiveness of law enforcement." *Indomenico v. Brewster,* 848 F.Supp. 1136, 1139 (S.D.N.Y.1994).

There is no genuine dispute of material fact as to the legality of Briukhan's traffic stop. Officers Terzian and Fesinstine have consistently reported that Briukhan swerved across traffic lanes, failed to use his turn signals, and drove for a substantial distance straddled across two lanes. (Terzian Dep. at 22:21–23:13; Fesinstine Dep. 21:10–12, ECF No. 20–4; IDTU Paperwork at 1, ECF No. 20–9.) Although he disputes these facts, Briukhan has submitted no substantive evidence to bolster his position. He relies solely on a passage from his deposition (Rule 56.1 Counter Statement ¶ 4, ECF No. 22–2 (citing Briukhan Dep. at 49:11–16)), but that

testimony comprises vague denials which, on their own "cannot . . . create a genuine issue of material fact where none would otherwise exist." *Hicks,* 593 F.3d at 166 (citation omitted). When asked how many times he changed lanes before the officers pulled him over, Briukhan did not contest that he changed lanes, answering instead: "I don't know." (Briukhan Dep. at 50:2–5.) Even "resolv[ing] all ambiguities" in Briukhan's favor, his testimony creates no material dispute of fact regarding whether the officers had cause for the stop. *Brod,* 653 F.3d at 164. On summary judgement this Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* Briukhan has created no such factual issue. Thus, the City is entitled to summary judgment on his unlawful stop and search claim.

### B. False Arrest

Plaintiff's § 1983 claim for false arrest stems from his right to remain free from unreasonable seizures, including arrest absent probable cause. *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006). His false arrest claim, therefore, succeeds or fails depending on the presence of probable cause. *Gonzalez v. City of Schenectady,* 728 F.3d 149, 155 (2d Cir.2013) (probable cause provides a complete defense to an action for false arrest).

There is no genuine dispute that the officers had probable cause to arrest Briukhan for driving with a suspended license. Briukhan does not disagree that he was driving, or that his license was, indeed, suspended. (Rule 56.1 Counter Statement ¶¶ 7, 10, ECF No. 22–2.) Additionally, it is undisputed that the officers checked his license for warrants and suspension during the traffic stop. Briukhan testified that while he was stopped the officers "ran [his] license." (Briukhan Dep. at 52:2–3.) Officer Terzian similarly

stated that he checked Briukhan's driver's license "[o]n a computer in the vehicle." (Terzian Dep. at 53:8–54:4) Officer Fesinstine confirmed that Briukhan was arrested because a "computer test check[,]" revealed that his license was suspended. (Fesinstine Dep. at 21:13–22.)[2] This routine computerized license check provided "more than sufficient . . . probable cause" to arrest Briukhan for violating VTL § 511(1)(a). *McGuire v. City of New York*, No. 03–CV–1182 (JSR), 2004 WL 307308 at *3 (S.D.N.Y. Feb. 13, 2004), *aff'd*, 142 Fed.Appx. 1, 3 (2d Cir.2005); *accord Mahase v. City of New York*, No. 96–CV–6105, 2000 WL 263742, at *3 (E.D.N.Y. Jan. 5, 2000) ("A computer printout showing that [the motorist] was driving with a suspended license is 'reasonably trustworthy information'" that he is in violation of VTL § 511(1)(a)).

Moreover, probable cause for violating VTL § 511(1)(a) provides an "absolute defense" with respect to *all* offenses Briukhan was charged with. *Jaegly*, 439 F.3d at 154 (probable cause need not exist "with respect to each individual charge" ultimately brought, but only with respect to the charge "actually invoked by the arresting officer at the time of arrest"). Defendants are, therefore, entitled to summary judgment on the false arrest claim.

## C. Fabrication of Evidence

■ To succeed on a fabrication of evidence claim, Briukhan must prove, *inter alia*, that officers Terzian or Fesinstine fabricated evidence and passed that evidence on to prosecutors. *Jovanovic v. City of New York*, 486 Fed.Appx. 149, 152 (2d Cir.2012). Briukhan cannot meet this burden.

Briukhan suggests that the officers fabricated evidence by using a portable breath test device that they knew to be defective and had not personally calibrated. (Pl.'s Mem. In Opp'n to Defs.' Mot. for Summ. J. 14, ECF No. 22.) The Court need not address whether the portable breath test device was properly calibrated, because that device does not form the basis for the criminal complaint ultimately lodged against Briukhan. (Criminal Complaint at 1, ECF No. 2010.) The complaint relies instead on the Intoxalyzer test (showing a .114% BAC level), which was videotaped and administered at the police precinct, less than an hour after Briukhan was stopped on the Belt Parkway. (Criminal Complaint at 1, ECF No. 20–10; Briukhan Dep. at 74:38, 75:7–9; IDTU Paperwork at 2–4, ECF No. 20–9.)[3] Briukhan does not challenge the veracity of that test. Thus, summary judgement is proper on the fabrication of evidence claim. *See Hoyos v. City of New York*, 999 F.Supp.2d 375, 394–95 (E.D.N.Y.2013) (plaintiff claimed defendants falsified a non-material fact, which would "not likely influence a reasonable jury's decision" and, thus he could not sustain a fabrication of evidence claim).

## D. Malicious Prosecution

■ To succeed on his malicious prosecution claim, Briukhan must "sub-

---

**2.** Briukhan does call attention to the date and time listed on the computer printout of his license check, which shows July 9, 2011 at 6:45 a.m. (FINEST Printout, ECF No. 20–6.) However, the time listed on this printout has no effect on the undisputed testimony establishing that Fesinstine and Terzian, following "routine" practice, ran Briukhan's license from their squad car during the traffic stop. (Briukhan Dep. at 52:2–3; Terzian Dep. at 53:8–54:4; Fesinstine Dep. at 21:13–22.) *See also McGuire*, 2004 WL 307308 at *2.

**3.** Although Briukhan asserts that the Intoxilyzer results would not be "admissible" (Rule 56.1 Counter Statement ¶ 16, ECF No. 22–2), nowhere does he dispute that he completed that test at 12:37 a.m. on July 9, 2011, at the police precinct, and that his BAC was .114%.

mit[ ] evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith." *Savino v. City of New York,* 331 F.3d 63, 73 (2d Cir.2003). "An element of any malicious prosecution claim is the absence of probable cause," *Jovanovic,* 486 Fed.Appx. at 152—though probable cause must be absent as to each of the charged offenses. *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991). Further, "[i]nformation obtained by the defendant 'after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause' for malicious prosecution claims." *Peterec v. Hilliard,* No. 12–CV–3944, 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) (quoting *Jackson v. City of New York,* 939 F.Supp.2d 235, 251 (E.D.N.Y.2013)).

■ There was clearly probable cause for each of Briukhan's charged offenses. The officers' observation of Briukhan's erratic driving provided probable cause for the violation of VTL § 1110. *See Scopo,* 19 F.3d at 782 (probable cause was present where police "directly observed [a motorist] violating the traffic laws"). The Intoxilyzer test result of a .114% blood alcohol content level, as well as the officers' observations that Briukhan had a "[v]ery strong odor of alcoholic beverages on [his] breath" and "bloodshot/watery eyes," all provide probable cause for the violation of VTL § 1192(2). (IDTU Paperwork at 1, 3, ECF No. 20-9); *Hoyos,* 999 F.Supp.2d at 387 (probable cause existed to make an arrest for driving under the influence where a motorist was "observed [ ] behind the wheel ... in a 'groggy' state with bloodshot eyes, which are typical indicia of inebriation"). The computer record retrieved during the traffic stop provided probable cause for the violation of VTL § 511(1)(A). *See Evans v. City of New York,* 308 F.Supp.2d 316, 329 (S.D.N.Y. 2004), *aff'd,* 123 Fed.Appx. 433 (2d Cir. 2005) (probable cause present where "plaintiff was arrested because the DMV computer records reflected that the plaintiff's license had been suspended" and "[t]here [wa]s no evidence that the information on the computer was false or inapplicable"). Accordingly, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim.

### E. Failure to Intervene and *Monell* Liability

Briukhan's remaining claims are without merit. His failure to intervene claim, premised on officer Fesinstine's failure to interrupt alleged constitutional violations, is derivative of the underlying claims of unlawful stop, false arrest, fabrication of evidence, and malicious prosecution. Because his underlying claims fail, so does failure to intervene. *See Wieder v. City of New York,* 569 Fed.Appx. 28, 30 (2d Cir. 2014) (where "underlying constitutional claims were properly dismissed ... dismissal of plaintiff's failure to intervene claim" was also proper).

■ Summary judgement is also proper Briukhan's municipal liability *(Monell)* claim. "Under *Monell,* a municipality may not be held liable under § 1983 solely on a respondeat superior theory," and Briukhan has failed to show that any municipal policy or custom caused him to suffer a constitutional deprivation. *Missel v. Cnty. of Monroe,* 351 Fed.Appx. 543, 545 (2d Cir. 2009).

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. SO ORDERED.