Alberto HOYOS, Plaintiff,

v.

The CITY OF NEW YORK, P.O. Scott Harrison, Shield No. 12787, Individually and in His Official Capacity, P.O. Ari Avron, Shield No. 9506, Individually and in His Official Capacity, Defendants.

No. 10–cv–4033 (NG).

United States District Court, E.D. New York.

Signed Dec. 10, 2013.

Filed Dec. 11, 2013.

---

Alex Umansky, Norinsberg LLP, Jon L. Norinsberg, Law Office of Jon L. Norinsberg, New York, NY, for Plaintiff.

Matthew J. Modafferi, Steve Stavridis, New York City Law Department, Benjamin E. Stockman, Corporation Counsel of the City of New York, New York, NY, for Defendants.

## *OPINION AND ORDER*

GERSHON, District Judge:

Plaintiff Alberto Hoyos ("Hoyos") brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants, the City of New York and Officers Scott Harrison and Ari Avron of the New York City Police Department, violated his civil rights as a result of his arrest and subsequent prosecution on two counts of driving under the influence of alcohol. Plaintiff was acquitted of the charges following a jury trial in the Criminal Court of the City of New York that concluded on November 19, 2009. In this action, plaintiff alleges that he was deprived generally of his federal civil rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments; falsely arrested; maliciously prosecuted; subjected to malicious abuse of process; deprived of his federal constitutional right to a fair trial; and subjected to the aforementioned violations as a result of the unconstitutional policies and procedures of the City of New York. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to his false arrest, malicious prosecution, abuse of process, and fair trial claims. For the reasons set forth herein, defendants' motion for summary judgment is GRANTED.

Defendants also seek judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to plaintiff's claims for deprivation of his "federal civil rights," unlawful search, and municipal liability. Plaintiff does not oppose defendants' motion for judgment on these claims. (*See* Pl.'s Opp. Br. at 2, n. 1.).[1]

## FACTS

The parties offer sharply different versions of certain of the facts surrounding the events of March 6, 2008, the date of plaintiff's arrest on charges of Operating a Motor Vehicle Under the Influence of Drugs or Alcohol, but, as will become clear, the differences between the parties' conflicting accounts are not material to the disposition of this action.

The core of undisputed facts as to which both parties agree is as follows. In the early morning hours of March 6, 2008, two non-party New York Police Department ("NYPD") officers, Patrick Lynch and Jennifer Olivera, transported three prisoners from the 115th police precinct to the Queens Criminal Court House in a marked NYPD van. After dropping off the prisoners, Officers Lynch and Olivera left the Queens Criminal Court House at approximately 2:30 a.m. and proceeded to return to the 115th precinct. As they were driving along the westbound Grand Central Parkway, Officers Lynch and Olivera observed plaintiff driving a dark Lexus sport utility vehicle ("SUV"). Plaintiff's vehicle, which had slowed to approximately 30 miles per hour, swerved suddenly, cutting across several lanes of the Grand Central Parkway and nearly striking the officers' police van. After the SUV came to rest— against the guardrail of the right-hand shoulder of the Grand Central Parkway (according to the officers) or parked in the exit lane of a Dunkin' Donuts/Mobil Gas Station rest area (according to plaintiff)— Hoyos remained in the vehicle and dozed off. Just minutes later, Officer Lynch knocked on the driver's side window of the SUV, awakening plaintiff. Plaintiff admits

---

**1.** Plaintiff's claims against defendants Harrison and Avron in their official capacities as officers of the New York City Police Department are duplicative of the claims against the City of New York. *See Lore v. City of Syracuse,* 670 F.3d 127, 168 (2d Cir.2012). Because plaintiff has voluntarily abandoned his municipal liability claims, the official capacity claims are also deemed abandoned.

to being in a "tired" and "groggy" state when he spoke with Officer Lynch and the other investigating officers, and he does not dispute that his eyes may have been bloodshot. (*See* Hoyos Dep. 139:13–21 & 162:10–11.)

After speaking with Hoyos, Officer Lynch called Officer Harrison on his personal cell phone to request assistance with a possible DUI offense (according to the officers) or with an arrest (according to plaintiff). Officer Harrison and his partner that night, Officer Avron, were assigned to the NYPD's Queens North Task Force. This task force is a specialized unit that concentrates on DUI enforcement and disorder control within the confines of the 104th, 108th, 109th, 111th, 112th, and 115th police precincts. Officer Harrison became a member of the Queens North Task Force in 2004, and Officer Avron became a member of the task force in 2006. As members of the task force, both officers had received specialized training for handling DUI arrests and collectively had made almost 200 DUI arrests. Approximately five minutes after receiving Officer Lynch's call, Officers Harrison and Avron arrived at the scene, and Officer Lynch briefed Officer Harrison about what he and his partner had observed.

At this point, the parties' narratives diverge. Defendants maintain that, upon their arrival at the scene, Officer Lynch informed Officer Harrison that, while returning to their precinct, plaintiff's SUV suddenly swerved into the officers' lane, nearly striking their police van; plaintiff's vehicle then came to rest at an angle at the side of the Grand Central Parkway; when Officers Lynch and Olivera first approached plaintiff's vehicle, he was slumped behind the wheel and appeared to be unconscious; and, in Officer Lynch's opinion, plaintiff appeared to be intoxicated. After speaking with Officer Lynch, Officers Harrison and Avron approached

plaintiff's vehicle. According to defendants, plaintiff was groggy and he exhibited signs of intoxication: his speech was slurred, his eyes were bloodshot, and he smelled of alcohol. Defendants testified that plaintiff admitted that he had had a few drinks at a club earlier that evening. Officer Avron then reached into plaintiff's vehicle, turned off the ignition, and asked plaintiff to exit the SUV. Upon exiting the vehicle, defendants observed that Hoyos was unsteady on his feet, and Officer Avron needed to grab his arm to prevent him from falling. At that point, defendants arrested Hoyos on one count of driving while intoxicated and transported him to the 112th precinct.

According to plaintiff, after having dinner at a friend's house, he fell asleep on the friend's couch until 2:00 a.m. in the morning of March 6, 2008, when he woke up and proceeded to drive home. While driving along the Grand Central Parkway, he began to feel "very tired" and "sluggish," so he decided to pull into a Dunkin' Donuts/Mobil Gas Station rest area located alongside the highway. Plaintiff contends that: (i) he slowed from 55–60 miles per hour to approximately 30 miles per hour, and then swerved across the Grand Central Parkway, only because he missed the entrance to the rest area; (ii) his SUV did not come to rest at an angle against the guardrail on the shoulder of the Grand Central Parkway; (iii) rather, he parked his vehicle in the exit lane of the rest area and turned the ignition off; (iv) he was merely resting when Officer Lynch tapped on his window; (v) he had not had anything to drink that evening; (vi) his breath did not smell of alcohol; (vii) he did not stumble when he exited the SUV; (viii) he did not tell any of the officers that he had a few drinks at a club; and (ix) he took a portable breathalyzer test at the scene.

The parties' narratives largely coalesce once again after plaintiff is arrested. Both

parties agree that plaintiff was taken to an Intoxicated Driver Test Unit room at the 112th precinct, which is equipped with breathalyzer machines and video equipment for recording the breathalyzer tests. While Officer Avron operated a video camera, Officer Harrison asked plaintiff multiple times if he would agree to submit to a breathalyzer test. When plaintiff did not agree to take the test, Officer Harrison advised him of the consequences under § 1194 of the New York Vehicle and Traffic Law of refusing to take the test, including the immediate suspension and subsequent revocation of his driver's license, but Hoyos again refused to take the breathalyzer test.

Defendants then met with prosecutors from the Queens County District Attorney's Office, and a criminal complaint against Hoyos was sworn to by Officer Avron. The criminal complaint charges Hoyos with one count of operating a motor vehicle while under the influence of alcohol or drugs in violation of § 1192(3) of the New York Vehicle and Traffic Law. The complaint alleges that Hoyos's breath smelled of alcohol, he had bloodshot and watery eyes, his speech was slurred, and he was unsteady on his feet when he exited his vehicle; Hoyos refused to take a breathalyzer exam at the 112th precinct; and that Hoyos admitted to having had a few drinks. Following a jury trial in the Criminal Court of the City of New York, County of Queens, that concluded on November 19, 2009, and at which both Officers Lynch and Avron testified, Hoyos was acquitted of the § 1992(3) charge and a lesser included charge of driving while impaired in violation of § 1992(1).

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Defendants are entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes relating to material facts—*i.e.*, "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.2008). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.2010) (internal quotation marks omitted), or "rest upon the mere allegations or denials" asserted in the pleadings, *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Instead, to defeat summary judgment, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir.2010). "[T]he judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. It is well-settled that "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## II. PLAINTIFF'S SECTION 1983 CLAIMS

 Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States. *See* 42 U.S.C. § 1983; *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.2010). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). There is no dispute here that the defendants were acting under color of state law.

### A. False Arrest Claim

 "[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir.2006). In analyzing a section 1983 false arrest claim, federal courts look to the law of the state in which the arrest occurred. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir.2013) ("A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."). Under New York law, a plaintiff alleging false arrest must show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir.2003) (internal quotation marks omitted) (citing *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).

 The first three elements of plaintiff's false arrest claim are not in dispute. As to the fourth element, defendants' warrantless arrest of Hoyos is "privileged" if the officers had probable cause to arrest him. *Jocks*, 316 F.3d at 135; *see also Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996) (referring to probable cause as a "complete defense" to a § 1983 action for false arrest).[2] Defendants are entitled to

---

**2.** Under New York law, an arrest made without a warrant raises a rebuttable presumption that such arrest was unlawful, and the defendant has the burden of raising and proving the affirmative defense of probable cause. *See Curry v. City of Syracuse*, 316 F.3d 324,

335 (2d Cir.2003); *Broughton*, 37 N.Y.2d at 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (holding that "neither actual malice nor want of probable cause is an essential element" of an action for false arrest when the arrest is effected without a warrant). In a § 1983 ac-

summary judgment on plaintiff's false arrest claim "if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir.2007). "If, however, on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate." *Id.*

 A police officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime," *Weyant*, 101 F.3d at 852. To determine whether probable cause exists, courts examine the totality of circumstances surrounding the arrest, including the actual information known to the officer at the time of the arrest, and then decide whether those facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Gonzalez*, 728 F.3d at 155.

 "The existence of probable cause need not be assessed on the basis of the knowledge of a single officer." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). Under the fellow officer doctrine, an arrest is permissible "even if an arresting officer lacks personal knowledge sufficient to establish probable cause," so long as the officer acts "as a result of communication with a . . . [fellow] officer" and "the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest." *Annunziata v. City of New York*, 2008 WL 2229903, at *3 (S.D.N.Y. May 28, 2008) (quoting *People v. Ramirez–Portoreal*, 88 N.Y.2d 99, 113, 643 N.Y.S.2d 502, 666 N.E.2d 207 (1996)); *see also People v. Jenkins*, 90 A.D.3d 1326, 1327, 935 N.Y.S.2d 204 (3d Dep't 2011). The pertinent inquiry with respect to information transmitted by a fellow officer is "directed to the nature and reliability of the information possessed by the person or agency transmitting the information." *People v. Rosario*, 78 N.Y.2d 583, 588–89, 578 N.Y.S.2d 454, 585 N.E.2d 766 (1991). A police officer is generally "entitled to rely on the contents of a fellow officer's [ ] report." *Annunziata*, 2008 WL 2229903, at *4.

 In this case, plaintiff was arrested on one count of driving under the influence of alcohol ("DUI"). The relevant portion of the New York statute provides: "No person shall operate a motor vehicle while in an intoxicated condition." N.Y. Veh. & Traf. Law § 1192(3) (McKinney 2003). In determining the propriety of an arrest for violating section 1192 of the New York Vehicle and Traffic Law, "[t]he only valid inquiry on this issue is whether,

tion for false arrest, however, it is an open question in the Second Circuit whether federal law displaces state law with respect to the allocation of the burden of proving probable cause and, if so, who ultimately bears that burden. *Compare Dickerson*, 604 F.3d at 751 (assuming, without analysis, that "[w]hen an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense") *with Davis v. Rodriguez*, 364 F.3d 424, 433 n. 8, 435 (2d Cir.2004) (noting that, in the absence of a warrant, "it remains an open question in this circuit whether the plaintiff or the defendant carries the ultimate burden of proof with regard to probable cause in a § 1983 unconstitutional false arrest case" and observing that several other circuits have placed this burden on the plaintiff); *see also Arnold v. Geary*, No. 09–cv–7299, 2012 WL 43623, at *6 (S.D.N.Y. Jan. 5, 2012) (noting that this question has not been squarely decided in the Second Circuit). I do not need to reach this question here, because plaintiff's claim fails regardless of which party has the burden of proof as to the existence of probable cause.

viewing the facts and circumstances as they appeared at the time of arrest, a reasonable person in the position of the officer could have concluded that the motorist had operated the vehicle while under the influence of intoxicating liquor." *People v. Farrell*, 89 A.D.2d 987, 988, 454 N.Y.S.2d 306 (2d Dep't 1982). Consequently, "[t]he legality of [such] an arrest ... is not conditioned upon whether the arresting officer specified the correct subdivision of Vehicle and Traffic Law § 1192, or upon his [or her] belief as to which subdivision had been violated. All that is required is that [the officer] have had reasonable cause to believe that defendant had violated Vehicle and Traffic Law § 1192." *People v. Gingras*, 22 Misc.3d 22, 23, 871 N.Y.S.2d 812 (App.Term, 9th & 10th Jud.Dists.2008) (internal quotation marks omitted). In fact, § 1192(9) expressly provides that anyone charged with a violation of subsection 3 of that statute may also be convicted of a violation of § 1192(1). Vehicle and Traffic Law § 1192(1) authorizes the arrest of any person who has impaired, to any extent, his or her ability to operate a motor vehicle as a reasonable and prudent driver through the consumption of alcohol. *See People v. Cruz*, 48 N.Y.2d 419, 426, 423 N.Y.S.2d 625, 399 N.E.2d 513 (1979). The degree of proof necessary to support an arrest for driving while impaired is "far less rigorous" than that required for driving while intoxicated. *People v. Reding*, 167 A.D.2d 716, 717, 564 N.Y.S.2d 489 (3d Dep't 1990). Accordingly, to have probable cause, an objectively reasonable officer must have been warranted in the belief that, at a minimum, Hoyos had operated a motor vehicle while his ability to do so as a reasonable and prudent driver was impaired by the consumption of alcohol.

■ Although the parties give different accounts of the events leading to plaintiff's arrest, the undisputed evidence here is sufficient to cause an officer of reasonable caution to believe that plaintiff was operating his vehicle while impaired by alcohol, thereby justifying his detention and arrest. First, defendants were entitled, under the fellow officer doctrine, to rely on Officer Lynch's report that Hoyos had swerved across several lanes of the Grand Central Parkway, almost striking a police van, at an unsafely slow speed shortly before three o'clock in the morning; he was slumped behind the wheel of his SUV just minutes after this erratic driving maneuver; and, in Officer Lynch's opinion, was intoxicated. Though plaintiff may dispute the accuracy of Officer Lynch's observations, he does not dispute that Officer Lynch relayed this information to Officers Avron and Harrison when they arrived at the scene. (Pl.'s Resp. to Defs.' Rule 56.1 Stmt. ¶ 19.) Moreover, Plaintiff does not materially dispute Officer Lynch and Officer Olivera's account that he swerved across multiple lanes of traffic on the Grand Central Parkway, almost striking their marked police van; indeed, he concedes that, against his "best judgment," he "cut across" several lanes of traffic of the highway before parking his vehicle. (Pl.'s Resp. to Defs.' Rule 56.1 Stmt. ¶ 36; *see also* Hoyos Tr. 10:9–21; 41:1–17; Hoyos Dep. 129:23–137:3.) Second, it is undisputed that Officers Harrison and Avron themselves observed Hoyos behind the wheel of an SUV in a "groggy" state with bloodshot eyes, which are typical indicia of inebriation.[3] Coupled with the report of plain-

---

**3.** Defendants argue that plaintiff's videotaped refusal to take a breathalyzer test further supports the existence of probable cause to arrest him. Plaintiff's refusal, however, only occurred at the 115th precinct *after* he had been placed under arrest on the Grand Central

Parkway. Accordingly, his refusal to submit to a chemical test cannot provide probable cause for his arrest. *See Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir.2002) ("When determining whether probable cause

tiff's erratic driving, these facts are sufficient to give defendants probable cause for the arrest.

Plaintiff insists that the information conveyed by Officer Lynch cannot be used to sustain probable cause because defendants did not expressly state that they relied on this information in making the arrest. The arresting officers' subjective basis for the arrest, however, is irrelevant to whether or not probable cause existed; rather, the existence of probable cause is assessed from the standpoint of an objectively reasonable police officer. *See, e.g., Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (holding that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"); *Lee v. Sandberg,* 136 F.3d 94, 103 n. 5 (2d Cir.1997) (police officers' "motivation to arrest plaintiff is irrelevant to the question of probable cause"). Any facts actually known to the arresting officer, including information derived from the reports of fellow officers, may be used to sustain probable cause. *Zellner,* 494 F.3d at 369

Even if a jury credited plaintiff's assertions that he had not in fact consumed any alcohol that night, that his breath and vehicle did not smell of alcohol, that he did not stumble upon exiting his vehicle, and that he was actually arrested at a Dunkin' Donuts rest stop, it is undisputed that the plaintiff was driving at erratic speeds and swerved across multiple lanes of the Grand Central Parkway in the early hours of the morning, was found just minutes later slumped behind the wheel in a slumber, was groggy when addressing the investigating officers, and had bloodshot eyes.

These undisputed facts indicate that defendants' determination that probable cause existed to arrest plaintiff on a DUI was objectively reasonable. Accordingly, defendants' motion for summary judgment on plaintiff's false arrest claim is granted.

Finally, even assuming that they lacked probable cause to arrest plaintiff, defendants are entitled to summary judgment on his false arrest claim on the basis of qualified immunity. This doctrine shields public officials from liability for civil damages if, *inter alia,* it was "objectively reasonable" for them to believe that their acts did not violate clearly established rights. *Anderson v. Creighton,* 483 U.S. 635, 638–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Gonzalez,* 728 F.3d at 154. Because the right to be free from false arrest is clearly established, the issue of qualified immunity turns on whether it was objectively reasonable for defendants to believe that probable cause existed. *Jenkins,* 478 F.3d at 86–87. This standard is met "if there was 'arguable' probable cause at the time of the arrest— that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins,* 478 F.3d at 87 (quoting *Lennon v. Miller,* 66 F.3d 416, 423–24 (2d Cir.1995)). However, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause.... If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.*

In the instant case, based on plaintiff's own version of the facts and on

exists courts must consider those facts *available to the officer* at the time of arrest and immediately before it."); *Pace v. Town of Southampton,* 678 F.Supp.2d 79, 85 (E.D.N.Y. 2010) ("[F]acts learned subsequent to the ar-

rest, whether they buttress or belie the existence of probable cause, are irrelevant to the false arrest claim.") (internal quotation marks omitted).

facts which plaintiff has not disputed, Officers Harrison and Avron knew that Hoyos had swerved erratically across several lanes of the Grand Central Parkway, almost hitting a marked police van, at an unsafely slow speed shortly before three o'clock in the morning; was found slumped behind the wheel of his car in a groggy state; and had bloodshot eyes. Given these undisputed facts, "a rational jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice." *Lennon*, 66 F.3d at 424–25. Accordingly, at a minimum, defendants are entitled to qualified immunity on plaintiff's false arrest claim.

## B. Malicious Prosecution Claim

 Plaintiff asserts a claim for malicious prosecution under § 1983. To succeed, a plaintiff must establish "the elements of a malicious prosecution claim under state law," *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir.2010), as well as a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights," *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000). Under New York law, a claim for malicious prosecution requires: "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997)) (internal quotation marks omitted); *see also Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003).

Here, defendants do not contest that they initiated a criminal proceeding. They met with the Queens County District Attorney's Office, and Officer Avron swore to and signed the criminal complaint. *See, e.g., Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir.2010). It is also undisputed that the criminal proceeding terminated in plaintiff's favor. Therefore, the viability of plaintiff's malicious prosecution claim depends on whether plaintiff can show that he suffered a sufficient post-arraignment liberty restraint, whether defendants acted with malice, and whether probable cause supported the criminal charges.

 Defendants' contention that plaintiff did not suffer a deprivation of liberty as a result of his criminal prosecution is without merit. Hoyos was required to make multiple court appearances during a twenty-month period from his arrest on March 6, 2008 until trial concluded on November 19, 2009. Though ultimately acquitted at trial of the criminal charges brought against him, plaintiff was subjected to the stress, risks, and costs associated with a criminal trial. These facts establish the requisite liberty restraint. *See Jocks*, 316 F.3d at 136 (holding that "the requirements of attending criminal proceedings and obeying the conditions of bail suffice"); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 126–27 (2d Cir.1997) (plaintiffs required attendance at seven court appearances held sufficient to establish deprivation of liberty).

 Defendants, however, are entitled to summary judgment on the malicious prosecution claim because probable cause existed for Hoyos's prosecution. Generally, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72. Plaintiff appears to argue that, if a malicious prosecution claim is based on allegations that government officials falsified evidence, probable cause ceases to be a defense. As Chief Judge Amon's well-reasoned decision in *Morse v. Spitzer*, No. 07–cv–4793, 2012 WL 3202963, at *2–*6 (E.D.N.Y. Aug. 3, 2012), explains,

however, a malicious prosecution claim is rooted in the Fourth Amendment right to be free from a baseless criminal prosecution. *See also Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). "Because a Fourth Amendment violation only occurs when probable cause is lacking, the lack of probable cause to prosecute remains an essential element of a malicious prosecution claim." *Morse*, 2012 WL 3202963, at *4; *accord McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir.2006). Accordingly, even where plaintiff alleges, as here, that the malicious prosecution is based on fabricated evidence, "the existence of probable cause independent of the fabricated evidence is a defense to that claim." *Morse*, 2012 WL 3202963, at *5. "To hold otherwise would untether the malicious prosecution claim from its Fourth Amendment roots." *Id.*, at *4.

 In a malicious prosecution case, "the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." *Davis v. City of New York*, 373 F.Supp.2d 322, 333 (S.D.N.Y.2005) (internal quotation marks omitted). The existence of probable cause is measured "as of the time the judicial proceeding is commenced (*e.g.*, the time of the arraignment), not the time of the preceding warrantless arrest." *Id.* Information obtained "after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause" for a malicious prosecution claim. *Jackson v. City of New York*, 939 F.Supp.2d 235, 251 (E.D.N.Y. 2013) (internal quotation marks omitted).

 In addition to the facts sustaining probable cause to arrest Hoyos, plaintiff's refusal to take a videotaped breathalyzer test at the 115th precinct is admissible evidence from which a jury could conclude that Hoyos was intoxicated. *See* N.Y. Veh. & Traf. Law § 1194(2)(f) (providing that a refusal to submit to a chemical test is admissible at trial, provided that the person was sufficiently warned of the consequences of refusing to take the test and persisted in the refusal); *see also People v. Smith*, 18 N.Y.3d 544, 550, 942 N.Y.S.2d 426, 965 N.E.2d 928 (2012) (explaining that proof of a refusal to submit to a chemical test "is received to permit the inference of consciousness of guilt, *i.e.*, that defendant refused to take the test because of his apprehension as to whether he would pass it") (internal quotation marks omitted). After plaintiff was arrested, defendants took him to the Intoxicated Driver Test Unit room at the 112th precinct, where Officer Harrison asked him multiple times if he would agree to take a breathalyzer test. Despite having been clearly advised of the consequences of a refusal, the video unequivocally shows that plaintiff did not agree to take the test at the precinct. Given Hoyos's refusal to take a breathalyzer exam—coupled with his erratic driving in the early hours of the morning, his state of slumber when first approached by the investigating officers, his grogginess, and his bloodshot eyes—no rational jury could conclude that there was not probable cause to believe that the prosecution could succeed. *See, e.g., People v. Beyer*, 21 A.D.3d 592, 594, 799 N.Y.S.2d 620 (N.Y.App. Div.3d Dep't 2005) (finding that "[t]he evidence of defendant's impaired condition and refusal to submit to a chemical test was sufficient to prove his intoxication").

 Finally, as with false arrest, an arresting officer is entitled to qualified immunity from a malicious prosecution claim if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *O'Neill v. Town of Babylon*, 986 F.2d 646, 649–50 (2d Cir. 1993) (internal quotation marks omitted).

Here, for the reasons stated above, reasonable officers could at least disagree about whether probable cause to prosecute Hoyos existed, and defendants Harrison and Avron are entitled to qualified immunity.

### C. Malicious Abuse of Process Claim

▮▮▮ Plaintiff asserts a claim for malicious abuse of process in violation of the procedural due process rights guaranteed by the Fifth and Fourteenth Amendments. As with false arrest and malicious prosecution, courts look to state law for the elements of a § 1983 claim based on malicious abuse of process. *Savino,* 331 F.3d at 76–77. In New York, in order to prevail on a claim for malicious abuse of process, a plaintiff must show that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." *Id.* at 76.

As an initial matter, to the extent plaintiff's claim is based on the Fifth Amendment, that claim is dismissed. Because plaintiff does not allege any deprivation of his rights by federal actors, but instead brings a claim against two NYPD officers and the City of New York, his claim is properly brought under the Due Process Clause of the Fourteenth Amendment. *See, e.g., Ambrose v. City of New York,* 623 F.Supp.2d 454, 466–67 (S.D.N.Y.2009).

With respect to this claim, defendants are entitled to summary judgment for two independent reasons. First, for the reasons stated above, there was probable cause for plaintiff's arrest and prosecution, which provides an excuse or justification for defendants' use of regularly issued legal process. *See Savino,* 331 F.3d at 78; *Sforza v. City of New York,* No. 07–cv–6122, 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009) ("While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process."); *Golden v. City of New York,* 418 F.Supp.2d 226, 235 (E.D.N.Y.2006).

▮▮▮ Second, although plaintiff alleges in conclusory fashion that defendants arrested and prosecuted him to obtain an improper collateral purpose, plaintiff has presented no evidence from which a reasonable jury could conclude that defendants aimed to achieve a collateral objective outside the legitimate ends of legal process. "The crux of a malicious abuse of process claim is the collateral objective element." *Douglas v. City of New York,* 595 F.Supp.2d 333, 344 (S.D.N.Y.2009); *Savino,* 331 F.3d at 76–77 (issuance of criminal process does not give rise to § 1983 claim unless defendant pursued an illegitimate collateral objective after process issued). To establish an illegitimate collateral objective, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution." *Savino,* 331 F.3d at 77. Instead, a plaintiff must show that the defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* In other words, the proper use of legal process based on a malicious motive, such as spite or ill will towards an adversary or as a desire for retaliation, is insufficient to satisfy the "collateral objective" requirement. *See id.* at 77–78

▮▮ A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution. *See Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 404, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). As plaintiff notes, courts have also found that a desire to safeguard one's employment, *see Douglas,* 595 F.Supp.2d at 344, a desire to

escape blame for allowing a suspect to go free, *see Richardson v. City of New York*, No. 02–cv–3651, 2006 WL 2792768, at *7 (E.D.N.Y. Sept. 27, 2006), and a desire to intimidate or embarrass the plaintiff, *see Granito v. Tiska*, 181 F.Supp.2d 106, 118 (N.D.N.Y.2001), can, at least in certain circumstances, constitute an improper collateral purpose.

 Hoyos has failed to allege a purpose "beyond or in addition to his criminal prosecution" that might support the collateral objective element of his malicious abuse of process claim, nor has he pointed to any facts upon which an inference of such an improper purpose reasonably could be inferred. The only particular objective that plaintiff contends defendants aimed to achieve—that defendants "wanted to obtain a 'collar,' " *i.e.*, to make an arrest (*see* Pl.'s Br. at 19)—is not an improper *collateral* objective. In contrast to an ancillary purpose such as extortion, a desire to make an arrest is not a purpose that is collateral to the proper use of legal process. Even assuming that defendants acted with a malicious motive, such as personal animus, in arresting Hoyos, plaintiff alleges merely that they employed legal process for the purpose (making an arrest) for which the law created it. *See Savino*, 331 F.3d at 77–78; *Hauser v. Bartow*, 273 N.Y. 370, 374, 7 N.E.2d 268 (1937); *Chamberlain v. Lishansky*, 970 F.Supp. 118, 122 (N.D.N.Y.1997). Because plaintiff has failed to raise a genuine issue of material fact regarding the existence of a collateral purpose other than that of securing his arrest and prosecution, defendants' motion for summary judgment on plaintiff's malicious abuse of process claim is granted.

### D. Fair Trial Claim

 Hoyos alleges that defendants deprived him of his constitutional right to a fair trial by fabricating evidence and forwarding it to the Queens County District Attorney's Office. The Second Circuit has held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*, 124 F.3d at 130. "A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir.2012).

 The existence of probable cause to arrest and prosecute is not a complete defense to a fair trial claim. *Ricciuti*, 124 F.3d at 130; *Morse*, 2012 WL 3202963, at *5. And, a fair trial claim may be brought alongside a malicious prosecution claim, even where both claims are based on the same allegedly false evidence and the same deprivation of liberty. *See Ricciuti*, 124 F.3d at 130; *Nibbs v. City of New York*, 800 F.Supp.2d 574, 575–76 (S.D.N.Y.2011); *Struthers v. City of New York*, 2013 WL 2390721, at *13 n. 18 (E.D.N.Y. May 31, 2013). That a plaintiff was acquitted of the criminal charges at trial does not bar his claim. *See Abdul-Rahman v. City of New York*, 10–cv–2778, 2012 WL 1077762, at *11 (E.D.N.Y. Mar. 30, 2012); *Douglas*, 595 F.Supp.2d at 346 n. 6.[4]

4. In fact, a plaintiff's "fair trial" claim does not even require that a trial have been held. *See Ricciuti*, 124 F.3d at 127, 129–30 (recognizing a fair trial claim where the criminal charges were dismissed prior to trial).

A § 1983 plaintiff who claims that a state official manufactured false evidence against him for use in state criminal proceedings invokes the protection of the Due Process Clause of the Fourteenth Amendment. *See Zahrey v. Coffey,* 221 F.3d 342, 348 (2d Cir.2000). It is axiomatic, however, that "the Constitution does not guarantee 'due process' in the abstract." *Zahrey,* 221 F.3d at 348 n. 4. Rather, with respect to state action, it guarantees that no "state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. For this reason, a fair trial claim based on allegations that the police fabricated evidence requires that the plaintiff "suffer[ ] a deprivation of liberty *as a result*" of the alleged fabrication. *Jovanovic,* 486 Fed.Appx. at 152 (emphasis added); *see also Zahrey,* 221 F.3d at 355 (holding that the "deprivation of liberty of which [plaintiff] complains [must] be *shown to be the result of* [the defendant's] fabrication of evidence") (emphasis added); *Morse,* 2012 WL 3202963, at *5 (same).

Relying principally on *Ricciuti,* Hoyos argues that a fair trial claim requires only that plaintiff show that defendants transmitted false information to prosecutors. The evidence of causation, however, was clear in *Ricciuti.* The plaintiffs alleged that the police deprived them of their right to a fair trial by fabricating evidence, including a confession, concerning the circumstances of an alleged assault. 124 F.3d at 129–30. As a consequence of the manufactured evidence, plaintiffs were charged with felony assault in the second degree, rather than misdemeanor assault. *Id.* at 126. This more serious charge caused plaintiffs to be ineligible for release on a desk appearance ticket, resulting in their detention for more than 30 hours. *Id.* In addition, once the Bronx district attorney's office received the investigatory file, the false evidence contained therein prompted prosecutors to add a charge of aggravated racial harassment. *Id.* at 126–27.

Here, Hoyos argues that material factual disputes as to whether defendants falsified evidence that he swerved off the Grand Central Parkway, exhibited signs of intoxication, and did not take a breathalyzer test at the scene of the arrest preclude summary judgment. (*See* Pl.'s Opp. at 5–6 & 22–23.) As discussed below, Hoyos cannot show that any of these alleged fabrications was both material (*i.e.,* likely to influence a jury's decision) and the legally cognizable cause of an injury to Hoyos's liberty interest (*i.e.,* that he "suffer[ed] a deprivation of liberty as a result" of the alleged fabrication of evidence). *Jovanovic,* 486 Fed.Appx. at 152.

Plaintiff disclaims, as he must, any reliance on alleged fabrications contained in the police officers' testimony at trial. (*See* Pl.'s Opp. at 23.) As witnesses at trial, the officers are entitled to absolute immunity from civil claims based on the substance of their testimony. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Jovanovic,* 486 Fed. Appx. at 152 (dismissing fair trial claim where "the only avenue by which the [allegedly false evidence] could reach the jury was through [the officer's] testimony, for which he enjoys absolute immunity"). For that reason, plaintiff limits his fair trial claim to allegations that defendants gave false information to prosecutors at the Queens County District Attorneys' Office. (Pl.'s Opp. at 23.)

Plaintiff principally alleges that defendants fabricated evidence regarding his purported state of intoxication. In particular, he asserts that defendants falsely told the Queens County prosecutors that his breath and car smelled of alcohol, his speech was slurred, he was unsteady on his feet when he exited his vehicle, and

he admitted to having had a few drinks.[5] He has failed, however, to identify how these alleged fabrications resulted in a deprivation of his liberty. Plaintiff asserts only that he was required to make court appearances and stand trial on charges of driving while intoxicated, but this deprivation resulted generally from his prosecution, which was supported by probable cause independent of defendants' allegedly false statements to the Queens County prosecutors. As explained above, Hoyos's erratic driving, his state of slumber when first approached by the investigating officers, his grogginess, his bloodshot eyes, and his refusal to take a breathalyzer exam at the precinct, provided ample probable cause for his prosecution.

■ Thus, although probable cause is not a complete defense to a fair trial claim based on fabricated evidence, plaintiff still must show, as discussed above, that the alleged fabrication caused a deprivation of liberty. In other words, where independent probable cause exists for the prosecution, plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself. Here, unlike in *Ricciuti*, Hoyos does not allege that the fabrications led him to be charged with a more serious crime or detained for a longer period of time. And, unlike the plaintiff in *Zahrey*, he cannot show that the allegedly false statements caused his initial arrest, the revocation of bail, a period of pre-trial detention, or any other adverse consequence. In sum, Hoyos has not offered any evidence from which a reasonable jury could conclude that the allegedly false statements caused a deprivation of liberty.

Turning next to Hoyos's claim that defendants fabricated evidence that he swerved off the Grand Central Parkway, plaintiff has failed to identify a material dispute of fact. Plaintiff concedes that he "cut across" several lanes of traffic of the Grand Central Parkway before stopping his vehicle. There is no material dispute between the non-arresting officers' observation that he "swerved across" the Grand Central Parkway, almost striking their police van, and his own admission that he "cut across" the highway.

Plaintiff's assertion that defendants falsified evidence that he was arrested on the side of the Grand Central Parkway near the intersection with the Long Island Expressway, when he claims he was actually detained while parked in the exit lane of a Dunkin' Donuts/Mobil Gas Station rest area, also fails to raise a triable dispute of material fact. The precise location of his arrest, standing alone, is not material. That is, evidence as to exactly where along the Grand Central Parkway Hoyos swerved and was arrested would not likely influence a reasonable jury's decision as to whether he had been driving while intoxicated.

Moreover, plaintiff's own testimony is the only evidence he offers in support of his contention that Officers Harrison and Avron supplied false information regarding the location of his arrest to the Queens County prosecutor. His account of the events, however, is significantly undermined by his admission on the morning of the incident, repeated three times while being videotaped at the 112th precinct, that he was arrested while he "was parked

---

5. To the extent that he also claims that defendants falsely told prosecutors that his eyes were bloodshot, Hoyos admitted at deposition that he did not know whether his eyes were red. (*See* Hoyos Dep. 162:10–11.) By contrast, all four officers testified to observing that plaintiff's eyes were bloodshot and watery. Because he fails to offer any admissible evidence disputing their observation, plaintiff has failed to raise a material issue of fact as to whether defendants falsely told prosecutors that his eyes were bloodshot.

on the side of the highway." (*See* Defs.' Ex. O.) In his videotaped statements, plaintiff never refers to the arrest having occurred at a Dunkin' Donuts/Mobil Gas Station rest area on the Grand Central Parkway. His testimony also is contradicted by the testimony of the two non-party officers, Officers Lynch and Olivera, who testified consistently with the defendants about the location of the incident. According to Officers Lynch and Olivera, their route from Queens Central Booking back to their precinct required them to exit the Grand Central Parkway well before the Dunkin' Donuts/Mobil Gas Station rest area where plaintiff now claims the incident occurred.[6] In sum, plaintiff's unsupported assertions regarding the location of his arrest are so at odds with his contemporaneous admissions regarding the incident, as well as the consistent testimony of the four officers, that his testimony lacks sufficient plausibility to create a triable issue of fact. *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir.2005).

Finally, plaintiff's allegation that the parties have given conflicting testimony regarding whether he refused to take a breathalyzer test at the scene of his arrest cannot support his fair trial claim. As discussed above, plaintiff admitted both at trial and in his deposition that, after Officer Harrison informed him that his first attempt at blowing into the breathalyzer machine at the scene had failed to result in a reading, he refused to blow a second time. Accordingly, his claim that he actually blew into a portable machine at the scene does not raise a material dispute of fact. Moreover, plaintiff does not allege, and the underlying record evidence identified by plaintiff does not indicate, that the officers conveyed the allegedly false information regarding the breathalyzer test to the prosecutors. (*See* Pl.'s Opp. at 5–6 & 22–23.) Because plaintiff bases his fair trial claim solely on information transmitted to the prosecutors, this alleged discrepancy cannot sustain his fair trial claim.

In sum, plaintiff has failed to identify any genuine disputes of material fact that would allow a reasonable jury to find that his right to a fair trial was violated.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings on plaintiff's claims for deprivation of his federal civil rights (First Claim for Relief), unlawful search (Third Claim for Relief), and municipal liability (Seventh Claim for Relief); and for summary judgment on plaintiff's claims for false arrest (Second Claim for Relief), malicious prosecution (Fourth Claim for Relief), malicious abuse of process (Fifth Claim for Relief), and denial of his constitutional right to a fair trial (Sixth Claim for Relief) is GRANT-

---

**6.** To the extent that plaintiff's fair trial claim rests on the allegation that Officer Avron falsely informed prosecutors that he observed Hoyos's vehicle stopped in the far left of traffic, instead of the far right lane, see Pl.'s Opp. at 5–6, this discrepancy is not material. The arrest report prepared on the morning of the incident, Officer Avron's testimony at trial, and the deposition testimony of all four officers coincide with plaintiff's own account of the events that, when Officers Avron and Harrison arrived at the scene, Hoyos's vehicle was stopped on the right-hand side of the Grand Central Parkway (whether on the highway itself or in the exit lane of a rest area). As a result, it is evident that the reference in the criminal complaint to Officer Avron having observed Hoyos's vehicle "in the left lane of traffic" is the sort of clerical mistake that is unlikely to influence a reasonable jury's decision, particularly given that the criminal complaint does not assert that Officer Avron himself saw plaintiff swerve across the highway.

ED. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**